406 S.E.2d 68

**Dorothy DENT, Petitioner,**

v.

**Honorable Tod J. KAUFMAN, Judge of the Circuit Court of Kanawha County, Jack Fruth and Fruth Pharmacy, Inc., a Corporation, Respondents.**

**No. 20086.**

Supreme Court of Appeals of West Virginia.

Submitted May 7, 1991.

Decided June 6, 1991.

John S. Haight, Tracy L. Webb, Kay, Casto, Chaney, Love & Wise, and Stanley E. Preiser, Preiser Law Offices, Charleston, for petitioner.

Johnnie E. Brown and David D. Molgaard, McQueen Law Offices, L.C., Charleston, for respondents.

NEELY, Justice:

We are asked to decide whether all employees of a corporate defendant are "parties" to a lawsuit for the purposes of *W.Va. Rules of Professional Conduct*, Rule 4.2 [1988].

On 11 August 1990, defendant, Fruth Pharmacy, Inc. fired plaintiff, Dorothy Dent, a cashier in its store located on Oakwood Road in Charleston, West Virginia, allegedly for negligence and violations of company policy. According to defendants, Ms. Dent's cash drawer was $3.18 over at the end of the day on 11 August 1990. The store claims that when Ms. Dent made a sale to an undercover investigator hired by the store to evaluate employees' job performance, Ms. Dent placed the money in the cash register without ringing up the sale or giving the "customer" a receipt. Ms. Dent disputes the store's allegation.

Ms. Dent filed suit against Fruth Pharmacy for its conduct in firing her. In the investigation of Ms. Dent's case, Ms. Dent's counsel contacted Belinda Bowers, an hourly employee in the same Fruth Pharmacy store who was working both on the date of Ms. Dent's alleged overage and on the date of Ms. Dent's firing. Apparently, Ms. Dent thought that Ms. Bowers might know something about the facts giving rise to Ms. Dent's firing through witnessing events on those two days.

When Fruth's counsel learned that Ms. Bowers had spoken with Ms. Dent's lawyer, he demanded that Ms. Dent's lawyer

refrain from contacting any employee of Fruth Pharmacy. Ms. Dent's counsel disagreed. Defendant then filed with the Circuit Court of Kanawha County a motion for a protective order prohibiting Ms. Dent's lawyer from contacting "any past or present agent, servant, or employee of Fruth Pharmacy, Inc. ... and to strike the use of the statement taken from Belinda Bowers by plaintiff's counsel." After a hearing, the court granted Fruth's motion with regard to further interviews, but reserved judgment on the use of Ms. Bowers' statement. The court's order stated:

> This 4th day of January, 1991, came the plaintiff, Dorothy Dent, by her attorney, Tracy L. Webb, and the defendants, Fruth Pharmacy, Inc., and Jack Fruth, by their counsel, Johnnie E. Brown, to hear plaintiff's Motion for a Ruling on the Propriety of Contacting Non–Managerial Employees of a Defendant Corporation Without the Prior Consent of Counsel, and the defendants' Motion for a Protective Order and to Strike the Recorded Statement of Belinda Bowers.
>
> After reviewing the defendants' Memorandum filed and hearing discussion among counsel, this Court does FIND that the employees of the Oakwood Fruth Pharmacy store are protected from contact from opposing counsel in accordance with Rule 4.2, Model Rules of Professional Conduct.
>
> Accordingly, it is hereby ORDERED and ADJUDGED that defendants' Motion for Protective Order is GRANTED and that plaintiff's counsel, representative, servant or agent, shall be precluded from making any contact with any employee of the Oakwood Fruth Pharmacy store without first obtaining permission from counsel for the defendants, Fruth Pharmacy, Inc., and Jack Fruth.
>
> It is further ORDERED and ADJUDGED that defense counsel shall make a reasonable attempt upon the request of plaintiff's counsel to schedule a convenient time for any interview of an employee at the Oakwood Fruth Pharmacy store by plaintiff's counsel.

> Further, to all the above, the Court noted plaintiff's counsel's objection and exception.

On 1 March 1991, Ms. Dent filed with us a petition for a writ of prohibition against the circuit judge, claiming that the judge misinterpreted Rule 4.2 and abused his power in granting the broadly worded protective order.

On 13 March 1991, we issued a rule to show cause, pursuant to *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). As we said in *Hinkle v. Black*, there is no need to brief the procedural question of whether prohibition is the appropriate remedy under prior case law; "[i]t shall be sufficient hereafter in prohibition cases to state the simple proposition that prohibition is not the appropriate remedy arguing the functional criteria of this case [*Hinkle*] or alternatively that prohibition is the appropriate remedy using the same criteria." 164 W.Va. at 118, 262 S.E.2d at 748. With that in mind, we move straight to the merits of the case.

## I.

It is clear that no nonmanagerial employees were involved in the decision to fire Ms. Dent. It also appears certain that no nonmanagerial employee or agent of Fruth Pharmacy, aside from the undercover investigator, was directly involved in the events leading up to Ms. Dent's firing.

■ Even though it does not appear that Ms. Dent's counsel intended to have *ex parte* interviews with the undercover investigator or any managerial employees of Fruth Pharmacy, the court's protective order restricts Ms. Dent's access to *all* employees of Fruth Pharmacy. The question we must answer is, which Fruth employees, if any, could Ms. Dent's counsel contact without running afoul of *W.Va. Rules of Professional Conduct*, Rule 4.2 [1988]. Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has

the consent of the other lawyer or is authorized by law to do so.

The Comment to the Rule attempts to explain the Rule:

COMMENT

This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy and a government agency to speak with government officials about the matter.

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a *managerial responsibility* on behalf of the organization, and with *any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability* or whose statement *may* constitute an *admission* on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question. [Emphasis added.]

As a threshold matter, it is worth noting that the comment to the Rule is not part of the Rule, and cannot be considered "binding" on us or on any other court.

The comment gives us three categories of employees to whom access by opposing party or counsel is limited: (1) managerial employees; (2) employees whose acts or omissions may be imputed to the corporation; and, (3) employees whose statements may constitute admissions by the corporation.

Nevertheless, it appears that not all courts and commentators have agreed on the precise make-up of the three categories described in the comment to Rule 4.2. Rather than engage in the useless exercise of "construing" an ambiguously worded Comment that has no binding legal significance, we have looked beyond the Comment for guidance.

Rule 4.2 is functionally identical to the earlier *W.Va. Code of Professional Responsibility*, DR 7–104(A)(1), which provided:

DR 7–104 Communicating With One of Adverse Interest.—(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

The purpose of DR 7–104(A)(1), like the purpose of Rule 4.2, is to prevent lawyers from taking advantage of parties when they are unaccompanied by counsel. Rule 4.2 does not appear to involve any changes from DR 7–104(A)(1), so cases applying DR 7–104(A)(1) are good guidance in applying Rule 4.2.

■ Many courts, bar associations, and commentators have wrestled with the application of these two rules to corporate employees.[1] Recently, the New York Court of Appeals, in *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990), addressed the problem and came up

1. For a collection of cases, *see,* Annotation, *Right of Attorney to Conduct Ex Parte Interviews with Corporate Party's Nonmanagement Employees,* 50 A.L.R.4th 652 (1986).

with what appears to be the best approach, so far. The *Niesig* court said:

> The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines "party" to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's "alter egos") or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. *All other employees may be interviewed informally.*
>
> \* \* \* \* \* \*
>
> In practical application, the test we adopt thus would prohibit direct communication by adversary counsel "with those officials, but only those, who have the *legal power to bind* the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in a representation." (Wolfram, *op. cit.,* § 11.6, at 613.) This test would permit direct access to all other employees, and specifically—as in the present case—it would clearly permit direct access to employees who were *merely witnesses* to an event for which the corporate employer is sued. [Emphasis added.]

76 N.Y.2d at 374–75, 559 N.Y.S.2d at 498–99, 558 N.E.2d at 1035–36. The New York court's test, stated above, is similar to the Comment to Rule 4.2, but is somewhat clearer and easier to apply. The court made a point of separating its test from the tangle of misunderstandings arising from the foggy language of the Comment to Rule 4.2:

> In order to put to rest any possible confusion, we make clear that the definition of "party" we adopt for the purposes of DR 7–104(A)(1) is not derived from the Official Comment to ABA Model rule 4.2. . . .

76 N.Y.2d at 375, 559 N.Y.S.2d at 499, 558 N.E.2d at 1036 n. 6.

The concurring judge in *Niesig* favored the simpler "control group" test, under which only the most senior management are shielded from *ex parte* contact. The concurring judge was concerned that the majority's test would "replace a useful and straightforward ex parte interview with a whole new and expensive litigation tier," involving the determination of which employees fell in the protected categories of corporate employees. 76 N.Y.2d at 377, 559 N.Y.S.2d at 500, 558 N.E.2d at 1037.

In a case involving *W.Va. Code of Professional Responsibility,* DR 7–104(A)(1), Judge Copenhaver of the Southern District of West Virginia remarked that, "[w]hen applied, however, to a corporation, no objective standard usable for all cases is readily available." *In re FMC Corp.,* 430 F.Supp. 1108, 1110 (S.D.W.Va.1977). We agree that no perfect standard exists, but we believe that the standard we adopt today is the best yet invented. As one court has said about the *Niesig* standard:

> This court is convinced the New York Court of Appeals has struck the proper balance of fairness, support for legitimate ethical considerations under DR–7–104(A)(1), and clarity of application and rationality in common sense terms for informal discovery.

*Bouge v. Smith's Management Corp.,* 132 F.R.D. 560 (D.Utah 1990).

█ It is important to remember that what we are dealing with here are rules of professional conduct, not rules of evidence. As the Supreme Court of Washington has said, "[i]t is not the purpose of the rule [DR 7–104(A)(1)] to protect a corporate party from the revelation of prejudicial facts." *Wright v. Group Health Hosp.,* 103 Wash.2d 192, 200, 691 P.2d 564, 569 [1984]. This point is equally true of Rule 4.2, and it is a point which Fruth seems not to understand. A short excerpt from Fruth's brief well represents the overall position Fruth took in its brief and in oral argument:

> In fact, consider the consequences if plaintiff's position is adopted by this court. Of prime example is the hospital defendant in a medical malpractice case. Is the court going to allow plaintiff's counsel to interview at will nurses and

other employees of a hospital concerning their *mere observations* when a *co-employee's* actions are being imputed to a hospital as a basis for its negligence? In all fairness, defense counsel needs to be present. [Emphasis added.]

In the situation that Fruth describes, it would be entirely proper for plaintiff's counsel to interview hospital employees who were mere witnesses, without the presence of the hospital's counsel.

In fact, a hospital employee could tell opposing counsel that he saw a surgeon snorting cocaine in the men's room before surgery, and his statement, no matter how damning to the surgeon or the hospital, would never constitute an *admission* by the surgeon or the hospital. It would be entirely proper for plaintiff's counsel in a medical malpractice case to have an informal interview with such an employee.

▮ Applying the *Neisig* test to the facts of this case, we find that the protective order issued by the circuit court was far too broad. In issuing the broadly worded protective order, the circuit court seriously misapplied *W. Va. Rules of Professional Conduct*, Rule 4.2, in a situation where the error would be very difficult to remedy adequately on appeal. *See Hinkle v. Black, supra.* Therefore, we issue a writ of prohibition against the circuit court of Kanawha County's protective order. The circuit court may now narrow its order to conform with this opinion, or may decide not to issue any protective order. We hope that lawyers will use good judgment in holding informal interviews, so that protective orders will not be needed in most cases.

Writ Granted.