437 S.E.2d 759

STATE of West Virginia ex rel. CHARLESTON AREA MEDICAL CENTER, A Corporation, Relator,

v.

Honorable Paul ZAKAIB, Jr., Judge of the Circuit Court of Kanawha County; Joshua Herb, An Infant Suing by His Next Friend and Mother, Vicki Herb; Vicki Herb; and Glen F. Herb, Respondents.

No. 21821.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1993.

Decided Oct. 29, 1993.

---

Richard D. Jones, Flaherty, Sensabaugh & Bonasso, Charleston, for relator.

W. Stuart Calwell, Mary McQuain, Calwell & McCormick, Charleston, for respondents Joshua Herb, an infant suing by his next friend and mother, Vicki Herb; Vicki Herb; and Glen F. Herb.

MILLER, Justice:

■ In this original proceeding in prohibition, the Charleston Area Medical Center (CAMC) seeks to prevent the enforcement of an order entered by the respondent judge on March 5, 1993. That order allowed the plaintiffs' attorneys, under certain restrictions, to interview on an *ex parte* basis present or former employees of CAMC with regard to their knowledge of the facts involved in a malpractice action brought against CAMC on behalf of the infant plaintiff, Joshua Herb. Recently, in Syllabus Point 1 of *State ex rel. Allstate Insurance Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993), we summarized our practice with regard to an original prohibition in this Court:

"The prohibition standard set out in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), permits an original prohibition in this Court to correct substantial legal errors where the facts are undisputed and resolution of the errors is critical to the proper disposition of the case, thereby conserving costs to the parties and economizing judicial resources."

I.

CAMC claims that the respondent judge's order violates the legal precepts contained in *Dent v. Kaufman,* 185 W.Va. 171, 406 S.E.2d 68 (1991), which dealt with an analogous situation. In *Dent,* the plaintiff's attorney sought to interview certain present employees of the defendant pharmacy corporation with regard to matters contained in the plaintiff's suit against the corporation. A protective order was sought contending that the plaintiff's attorney would violate Rule 4.2 of the West Virginia Rules of Professional Conduct by conducting such interviews. This rule is the same one involved in the present case. Rule 4.2 contains this general admonition: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

A literal reading of Rule 4.2 would seem to indicate that it does not cover an attorney's interview of employees of a corporation that the attorney has sued unless such employee is a party to the litigation. However, in *Dent,* we recognized, as had other courts, that the Official Comment to the rule contains language that indicates this rule is designed to cover employees of an organization or corporation that is a named party.[1]

■ After a review of authorities from other jurisdictions, we came to this conclusion in Syllabus Point 2 of *Dent:*

"A corporate 'party' for the purposes of *W.Va. Rules of Professional Conduct,* Rule 4.2, includes those officials, but only those, who have the legal power to bind the cor-

---

1. The applicable language of the Official Comment to Rule 4.2 quoted in *Dent v. Kaufman,* 185 W.Va. at 174, 406 S.E.2d at 71, is:

   "'In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a *managerial responsibility* on behalf of the organization, and with *any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal*

liability or whose statement *may* constitute an *admission* on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f).

   "'This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question. [Emphasis added.]'"

poration in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in a representation."

The order entered by the respondent judge in this case did not violate *Dent*'s rule as it recognized that *ex parte* contact could not be made with those employees of CAMC classified in Syllabus Point 2 of *Dent* as those "who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in a representation."[2] Consequently, we conclude that with regard to the present employees of CAMC, the respondent judge's order correctly reflects our holding in *Dent* and the writ is denied as to this portion of the order.

## II.

A subsidiary issue in this case is whether Rule 4.2 has any applicability to former employees. This issue was not present in *Dent*. In this case, the trial court after limiting the *ex parte* interviews in regard to present employees, as set out in note 2, *supra*, went on to state: "Plaintiffs' counsel *is* permitted to contact and interview, on an ex parte basis, any present or former employees of CAMC who do not fall within the hereinabove recited exceptions." (Emphasis in original).

Both parties appear to be confused about the scope of the order with regard to the plaintiffs' right to interview former employees of CAMC on an *ex parte* basis. The above-quoted language from the order suggests that interviews of both present or former employees are subject to the exceptions contained in the order. CAMC seizes on the imputed liability language in the order to argue that this should preclude former em-

ployees from being interviewed. However, in *Dent*, we did not deal with the question of an *ex parte* interview of a former employee.

■ It must be remembered that Rule 4.2 of the Rules of Professional Conduct pertains to an attorney's professional conduct. It is not a rule of evidence. The primary purpose of Rule 4.2 is to protect the attorney-client relationship by preventing one party's attorney from making *ex parte* contact with another party. We emphasized this point in *Dent*: "It is important to remember that what we are dealing with here are rules of professional conduct, not rules of evidence." 185 W.Va. at 175, 406 S.E.2d at 72. *See also Hanntz v. Shiley, Inc.,* 766 F.Supp. 258 (D.N.J.1991); *Valassis v. Samelson,* 143 F.R.D. 118 (E.D.Mich.1992). The Court in *Valassis v. Samelson,* 143 F.R.D. at 122, made this comment about interpreting Rule 4.2 and its Official Comment:

> "The Court initially observes that the purpose of a comment is to explain a rule; a comment to a rule does not add to or in any way expand upon the rule; it is explicative of the rule. Therefore, although the Comment in this case explains the application of Rule 4.2 to a corporate party, it does not expand the scope of that rule.
>
> "The application of Rule 4.2 is specifically limited to a party. The Rule says that 'a lawyer shall not communicate about the subject of the representation *with a party....*' Therefore, any analysis of the scope of Rule 4.2 must begin with a determination that the person to be approached by the attorney is indeed a party."

■ The rule itself refers only to a party. Thus, the right to interview *ex parte* a nonparty is permitted unless that individual has secured counsel for legal advice as to the controversy. This latter point is recognized specifically in the Official Comment to Rule 4.2.[3]

---

**2.** The pertinent language of the March 5, 1993 order is:

"[P]laintiffs' counsel are prohibited from initiating or participating in any *ex parte* contact with present employees of CAMC, who have the legal power, that is 'managing/speaking' authority for CAMC; or whose acts or omissions in the matter in litigation are binding on

or may be imputed to CAMC for the purposes of its liability in this litigation; or who are responsible for implementing the advice of CAMC's counsel."

**3.** The pertinent part of the Official Comment to Rule 4.2 states: "This rule also covers any person, whether or not a party to a formal proceed-

The complication involving Rule 4.2 is that it does not contain specific language dealing with employees of organizations who may by their position with the organization be able to legally bind the corporation. However, as we recognized in *Dent*, the Official Comment to the Rule addresses this concern. In applying the Comment, a distinction must be made between present and former employees. Former employees are distinguishable because their ability to bind an organization is restricted by the Rules of Evidence. Under Rule 801(d)(2)(D) of the Federal Rules of Evidence and its counterpart in Rule 801(d)(2)(D) of the West Virginia Rules of Evidence, statements of former employees cannot be considered an admission against the employer since they were not "made during the existence of the relationship[.]" [4] Thus, much of the damaging nature of such statements is eliminated with regard to *ex parte* interviews of former employees.[5]

There is little question that a majority of jurisdictions that have had occasion to consider whether Rule 4.2 restrictions are applicable to former employees have concluded that they are not applicable. *See, e.g., Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F.Supp. 899 (E.D.Pa.1991), *appeal dismissed without opinion*, 961 F.2d 207 (3d Cir.1992); *Hanntz v. Shiley, Inc., supra; University Patents, Inc. v. Kligman*, 737 F.Supp. 325 (E.D.Pa.1990); *Valassis v. Samelson, supra; In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556 (N.D.Ga. 1992); *Shearson Lehman Bros., Inc. v. Wasatch Bank*, 139 F.R.D. 412 (D.Utah 1991); *Dubois v. Gradco Sys., Inc.*, 136 F.R.D. 341 (D.Conn.1991); *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621 (S.D.N.Y. 1990), *aff'd*, 1990 WL 180571 (No. 87 Civ. 3297 S.D.N.Y. Nov. 15, 1990).

Some of these cases have relied on the ABA Committee on Ethics and Professional Responsibility Formal Opinion 359 issued in March, 1991 (ABA Formal Opinion 91–359), which determined that Rule 4.2 did not extend to former employees, including managerial employees.[6] *See, e.g., Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F.Supp. at 902–04; *Hanntz v. Shiley, Inc.*, 766 F.Supp. at 266–67; *Valassis v. Samelson*, 143 F.R.D. at 122. In view of the lack of any precise language in Rule 4.2 and the specific interpretation in ABA Formal Opinion 91–359 that Rule 4.2 does not apply to former employees of an organization, we decline to

ing, who is represented by counsel concerning the matter in question."

4. The relevant text of Rule 801(d)(2)(D) of the West Virginia Rules of Evidence is:

"*Statements Which are not Hearsay.*—A statement is not hearsay if—

\* \* \* \* \* \*

"(2) Admission by Party–Opponent.—The statement is offered against a party and is … (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship[.]"

5. Conceivably, if a former employee, while employed in a position covered by *Dent*, made a statement covered under Rule 801(d)(2)(D) of the Rules of Evidence, and such statement was subsequently revealed in an *ex parte* interview, it would be protected under *Dent*.

6. The federal district court in *Valassis v. Samelson*, 143 F.R.D. at 121, quoted the following text from the ABA Formal Opinion 91–359 at 901:143–44:

" 'While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employees [*sic* ] [employers], *the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended.* Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of the [*sic* ] Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

" '*Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.*' " (Emphasis added in *Valassis*).

The ABA opinion recognized that at such an interview the attorney must disclose to the former employee the attorney's role in the matter, the identity of the attorney's client, and that the former employer is a party adverse to the client. These latter safeguards are part of an attorney's duty when dealing with unrepresented persons on behalf of a client under Rule 4.3 of the Rules of Professional Conduct.

create a different standard under our Rule 4.2. As we stated earlier, the primary goal behind Rule 4.2 is to protect the attorney-client relationship. To enlarge its scope defeats the broad discovery purposes contained in Rule 26 of the West Virginia Rules of Civil Procedure.

Consequently, we conclude that Rule 4.2 of the Rules of Professional Conduct is not designed to foreclose *ex parte* interviews of former employees of an organization by an attorney representing a party adverse to the organization unless the former employees are represented by their own attorney. To the extent that the respondent judge's order may be interpreted to restrict *ex parte* interviews of former employees of CAMC, such an interpretation is erroneous.

Accordingly, the writ of prohibition is denied.

Writ denied.