**WEIDER SPORTS EQUIPMENT CO., LTD., Plaintiff,**

v.

**FITNESS FIRST, INC., d/b/a American Distributors, Defendant and Third–Party Plaintiff,**

v.

**ICON HEALTH AND FITNESS, INC., Third–Party Defendant.**

No. 95–C–776 W.

United States District Court,
D. Utah,
Central Division.

Jan. 16, 1996.

David J. Jordan, Kenneth B. Black, Stoel Rives, Salt Lake City, UT, for Plaintiff.

Ellen Maycock, Lyndon Ricks, Kruse, Landa & Maycock, Salt Lake City, UT, for Defendant & Third–Party Plaintiff.

Randall W. Bodner, Kevin J. O'Connor, Joshua Levy, Silvestre A. Fontes, Ropes & Gray, Boston, MA, Brad Bearnson, Logan, UT, Allan L. Larson, Snow, Christensen & Martineau, Salt Lake City, UT, for Third–Party Defendant.

## MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

The third party defendant, Icon Health and Fitness (Icon), and defendant Fitness First d/b/a American Distributors (American), made a motion for a protective order and for exclusion of evidence (File Entry # 53). The motion seeks the suppression at trial, or otherwise, of all evidence directly or indirectly obtained through what Icon con-

tends were unethical conversations with James Thompson, who is an employee of Icon. The allegation is that Thompson, prior to the time this action was commenced, was contacted some twenty-six times by private investigators working for New York attorneys for plaintiff, Weider Sports Equipment Co., Ltd. (Weider). The contacts were by telephone at Thompson's Icon office. Icon also seeks a restriction preventing Weider from "taking discovery" in regard to any matters or conduct, including any alleged breaches of a Distribution Agreement between Weider and Icon, that were the *subject of discussions* with Thompson. To grant this request would apparently foreclose any access to Thompson and some others involving the breach of the agreement which is the subject of the litigation in this case. The relief if allowed could effectively foreclose plaintiff's claim. Icon also seeks an order requiring Weider to produce documents, tapes and information obtained in the conversations with Thompson. An extensive memorandum was submitted by Icon in support of its motion (File Entry # 14). American joined in the motion but did not file a memorandum or other affidavit clearly showing their standing or injury.

▇▇▇▇ As to American's motion, if there has been any unethical conduct by plaintiff's attorneys it has not involved any employees of American or intruded on an attorney/client relationship involving American. Therefore, it is concluded American lacks standing to seek suppression or other relief as to the questioning of Thompson. If there has been unethical conduct on the part of plaintiff's attorneys it was directed exclusively against Icon. *O'Connor, Cavanagh, Anderson, et al. v. Perlin,* 30 F.3d 39, 42 (6th Cir.1994); *Uselton v. Commercial Lovelace Motor Freight,* 9 F.3d 849, 854 (10th Cir.1993). The injury in fact element of standing requires the complainant to have suffered invasion of a legally protected interest which is concrete and particularized. *Clajon Production Corp. v. Petera,* 70 F.3d 1566, 1570–1571 (10th Cir.1995). American has not carried its burden in this matter and its motion must be denied.

Icon contends that at the time plaintiff's agents contacted Thompson he was represented by counsel and therefore the motion for a protective order is proper. There is no evidence Thompson was represented by individual counsel. The claim has validity only if it is found Thompson was a representative of Icon and represented by its counsel in a corporate capacity. The litigation in this case involves a distribution agreement between Weider and Icon and Weider contends American violated the agreement and Icon has been brought in by American by impleader. There is no question that there had been discussions between Weider's New York counsel and Icon's counsel prior to this litigation and then Weider's counsel hired a private investigative firm which contacted James Thompson. Litigation, in this case, had not commenced at the time. In the conversations with Thompson, misrepresentations were made as to the nature of the inquiry, the investigators posed as potential customers.[1] Icon contends the investigative agent's conduct is attributable to Weider's New York counsel by virtue of Rule 5.3, Utah Rules of Professional Conduct.[2] Critical to the position of Icon is its contention the conduct violates Rule 4.2 Utah Rules of Professional Conduct.[3] Icon contends the communication with Thompson violated Rule 4.2 because Weider's agents did not obtain approval for the communication with Thompson from Icon's counsel. Icon contends that Thompson had managerial responsibilities, however, this is based mostly on Weider's allegations in other litigation not on any significant proof submitted by Icon. At the time of argument on Icon's motion, counsel

---

**1.** This aspect of Icon's motion has not raised any other substantive Rules of Professional Responsibility other than Rules 4.2 and 4.3.

**2.** Icon contends the standard for its motion is the Utah Rules of Professional Conduct adopted by this court in D.Utah Rule 103–1(h). This has not been disputed by Weider. Therefore, the law of this district will be the governing standard.

**3.** Icon also sought to rely on Rule 4.3(b). However, this rule is not applicable in the context of a representative party under Rule 4.2. The question of Rule 4.3(b) will be discussed later on in this opinion.

for Icon explained that Thompson had a salary of $30,000, which is modest for a managerial position. There is no real proof as to Thompson's functional status. Icon's submission is otherwise vague as to Thompson's actual status. It must be concluded that Icon has not established Thompson's managerial or supervisory status with any degree of precision. Further, at hearing, counsel for Icon suggested Thompson may have had a relationship with Icon's attorneys to which an attorney/client relationship could be asserted or at least contended as being involved with Thompson's status (see references in Docket Entry # 77). This was not shown from comments, during the interviews, made by Thompson about attorney approval of certain transactions and Icon has not carried its burden of showing an attorney/client relationship to which Thompson was involved that is within the scope of *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Therefore, it is concluded the only issues are whether there has been a violation of Rule 4.2 of the Utah Rules of Professional Responsibility and, if so, whether suppression of evidence and limitation on discovery is an appropriate remedy. It is asserted by Weider that Icon waived any protection it had against the use of the evidence. As to the claim of waiver, this matter is factually contested and since the disposition of the issues turns on other considerations the court need not address the waiver issue.

### Rule 4.2   Utah Rules of Professional Conduct

■ This court has adopted the "Utah Rules of Professional Conduct, as revised and amended and as *interpreted* by this court" (Emphasis added). D.Utah Rule 103–1(h). The ethical standards rule for this court, D.Utah Rule 103–1(h), does not expressly adopt the commentary to the Utah Rules although the commentary may be a help to interpretation. *Bougé v. Smith's Management Corp.,* 132 F.R.D. 560, 564 (D.Utah 1990). Although in *Bougé,* the court was exclusively concerned with the scope of DR–7–104(A)(1), it did address the proper interpretation of the Rule 4.2 and concluded that the application now urged for the Rule

by Icon was not a proper construction. *Bougé* dealt with the propriety of counsel contacting low level employees of a company after litigation had commenced and concluded that would be allowed; this case is further removed from that situation because this litigation had not commenced when Weider's agents contacted Thompson. Further, Thompson is not a party to this litigation. Icon was not named originally as a party to this case but was brought in as a third party defendant. It may be argued that Weider did not contemplate this action would include Icon. Also, as noted before, the exact status of Thompson, other than as some form of employee of Icon, has not been established.

Rule 4.2 of Utah Rules of Professional Responsibility was clearly adopted by this court as of March 1, 1993 with adoption of newly revised rules of practice for the District of Utah. However, Rule 4.2 is virtually identical with former DR–7–104(a)(1) of the Utah Code of Professional Responsibility, *Polycast Technology Corp. v. Uniroyal Inc.,* 129 F.R.D. 621, 623 (S.D.N.Y.1990), see also Code Comparison to Rule 4.2 Utah Rules of Professional Conduct, therefore decisions addressing that provision are relevant and especially *Bougé v. Smith's Management Corp.,* supra.

■ Rule 4.2 of the Utah Rules of Professional Conduct provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorize by law to do so.

The rule uses the term "party" which suggests that only communications with individuals or an entity represented in litigation is precluded. Also, adding some support to the same conclusion is the terminology "in the matter" which suggests identifiable parameters that could be circumscribed by pleadings and issues. If that interpretation were applied in this case, Rule 4.2 would have no application because this litigation was not being pursued at the time of the communications with Thompson. Icon refers to the

comment to Rule 4.2 which provides "This Rule also covers any person whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." The comment is not in harmony with the plain language of Rule 4.2. Further, as noted before, this court's Rule 103–1(h) did not adopt the comments to the Utah Rules, but considers them only as an aide in interpretation. Thompson was not represented by counsel in a personal capacity. Icon was represented, but probably so would be every corporation of any size. This argument would expand the no-contact restrictions of Rule 4.2 to insulate corporations from virtually any inquiry if Icon's position is adopted. The "scope" portion of the Utah Rules states "many of the comments use the term 'should.' Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules." The same provision also states that the Rules "should be interpreted with reference to the purposes of legal representation and of the law itself." Consequently, this court will construe the comments as advisory and not to as established standards unless there is a compelling justification for accepting such a restriction in this case.

It is appropriate to observe that the American Bar Association (ABA) House of Delegates has recently amended ABA Model Rule 4.2 by changing the word "party" to "person" to make it clear the Rule applies beyond parties to litigation. Vol. 21 # 1 *Litigation News* (1995). This was to address "longstanding uncertainties regarding the rule." Id. The new comments make it clear that the party making the communication must have actual knowledge that the other party is represented.[4] The new comments to 4.2 reject the control group test for the extent of the no contact restriction when dealing with a corporation. The court agrees that in light of *Upjohn v. United States,* supra, a more utilitarian standard is applicable in the case of a corporation. The importance of the new changes is that they underscore the ambiguity of the present Rule 4.2 of the Utah Rules

of Professional Conduct. The changes are not now a part of the ethical rules of this district.

Based on the wording of Rule 4.2, the court concludes the Rule only has application when the communication is with a "party" which means after litigation has commenced. This comports with the interpretation given the rule by the Tenth Circuit.

In *United States v. Thomas,* 474 F.2d 110 (10th Cir.1973) the court, in a criminal case, disapproved of a post charges interview of a defendant without prior approval of counsel where during the interview a written statement was obtained from a criminal defendant. The court indicated the interview, which was conducted by a Government agent, violated a canon of ethics (not referenced). However, the court refused to reverse by applying an exclusionary rule. The court also failed to find a violation of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) which was in fact directly violated.[5] The Sixth Amendment does have application to such ex parte contacts. *Moran v. Burbine,* 475 U.S. 412, 428–30, 106 S.Ct. 1135, 1144–1145, 89 L.Ed.2d 410 (1986). *Thomas,* therefore, does not support Icon's position and does support the conclusion that the ethical restrictions of the no contact provisions of Rule 4.2 are applicable only after litigation has begun, which was the circumstance in that case.

The Tenth Circuit reconsidered the issue in *United States v. Ryans,* 903 F.2d 731 (10th Cir.1990). The case involved the Government's use of an informant to engage in and record conversations with a criminal suspect but after counsel had been retained. The interview was before charges were filed. The court therefore did not have a Sixth Amendment issue before it and it held DR7–104(A)(1) to be inapplicable. The court held the rule did not apply to inquiries of unindicted suspects. The court said a preindictment inquiry was not barred. It rejected the Second Circuit's position to the contrary in *Unit-*

---

4. In this case Weider's agents knew Icon was represented. However, the proof is lacking to show they knew the status of Thompson with Icon, which remains vague at this point.

5. In *Massiah,* the court said the ABA Cannon was inapplicable because it dealt with the conduct of "lawyers not investigators" 377 U.S. at 210–211, 84 S.Ct. at 1205.

*ed States v. Hammad,* 858 F.2d 834 (2nd Cir.1988).[6] In *Ryans* the court stated as to DR7–104(A)(1):

> Although the Code does not define these terms, the rule appears to contemplate an adversarial relationship between litigants, whether in a criminal or a civil setting. This interpretation is consistent with the policies underlying the disciplinary rule and the ethical canon from which it derives. We agree, for example, with the District of Columbia Circuit's conclusion that the contours of the "subject matter of the representation" are uncertain during the investigative stage of the case, and therefore less susceptible to the damage of "artful" legal questions which the disciplinary rule is designed in part to avoid.
>
> 903 F.2d at 739.

The *Ryans* court followed the majority position and found defendant had no basis for complaint. See also *United States v. Lemonakis,* 485 F.2d 941, 955–956 (D.C.Cir.1973). *Ryans* concluded "we hold that DR–7–104(A)(1)'s proscriptions do not attach during the investigative process before the initiation of criminal proceedings." Since the court had previously said the rule had application to civil cases, the same conclusion is required, in a civil case, that the no contact rule does not apply until there is a "party" status and adversarial proceedings have been commenced. See also 903 F.2d at 740. This conclusion is supported by other subsequent Tenth Circuit statements. See *United States v. Mitcheltree,* 940 F.2d 1329, 1341 (10th Cir.1991); *United States v. Adams,* 977 F.2d 596, 1992 WL 279227 (10th Cir.1992) (unpublished) (In this case the court also rejected suppression as an appropriate remedy for an alleged violation of Rule 4.2).

Although there is authority for a contrary position from other sources, *Hammad,* supra; *Ex Parte Communications and the Corporate Adversary: A New Approach,* 66 N.Y.U.L.Rev. 1456, 1461 (1991); 2 G. Hazard & Whodes, *The Law of Lawyering,* (2d Ed.1990) 733, 734, three strong reasons are applicable why Rule 4.2 of the Utah Rules of Professional Conduct should apply only after litigation has commenced, at least in the context of this case. First, is the clear precedent in criminal cases in this Circuit holding 4.2 inapplicable until adversarial proceeding begin. Second, is the acknowledged ambiguity in the Rule deriving in part from the use of the term "party" and nothing specifically existing in the rule as to time for its application. Third, is the fact that the ABA, recognizing the ambiguity of Rule 4.2, has seen fit to amend the ABA rule for clarification. This has not been done in this district and the standard is what the term "party" should denote in the current Rule 4.2.

### The Problematical Relationship Between The No Contact Provisions of Rule 4.2 and Rule 11, F.R.C.P.

Central to Icon's position by its motion is an interpretation that goes beyond the language of Rule 4.2 and invokes the Comment to the Rule. There is nothing in the Rule itself that refers to the scope of its application in the context of making contact with corporate employees. Icon invokes the comment to Utah Rules 4.2, which adopts the ABA position, and states:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

If read literally, and implying the broadest possible interpretation for the term admission,[7] a construction could arise from the

---

**6.** The Second Circuit's position in *Hammad* is a minority position among the federal circuits, 903 F.2d at p. 736, and in *Hammad* the court refused to grant suppression because the "law was previously unsettled in this area." *Id.*

**7.** An admission may not necessarily fit the implication of liability language of the Comment. Ad-

missions is a broader concept. Wigmore, *Evidence* § 1059 (Chadbourn Rev.) notes that an admission "is but an item of evidence, is therefore not in any sense *final* or *conclusive.*" The effect of the Comment then, if applied to the extent of Rule 801(d)(2)(D) F.R.E., is to inhibit the acquisition of mere evidence.

argument that any communication that could fit under Rule 801(d)(2)(D) F.R.E. would be prohibited, therefore, virtually any communication with an organization employee would be prevented without the organization's counsel being present or contacted if the organization is a party. Ernest W. Lidge III *The Ethics of Communicating with an Organization's Employees. An Analysis of the Unworkable "Hybrid" or "Multifaction" Managing–Speaking Agent, ABA, and Niseg Tests and A Proposal for a "Supervisor" Standard.* 45 Ark.L.Rev. 801, 851–52 (1993) ("This could be *any* employee"). Also *Chancellor v. Boeing Co.,* 678 F.Supp. 250, 251–252 (D.Kan.1988). This could prevent any pretrial inquiry that would gather evidence from an employee of an organization. In most instances, this would block acquisition of important evidence about corporate practices e.g. civil right violations, age discrimination, improper corporate or labor practices, improper commercial practices, and frauds.[8] This application of Rule 4.2 would preclude, prior to litigation, the gathering of the necessary factual information to determine if a valid claim for relief could be maintained and in its most exaggerated context leave a party without a factual basis to assert an avenue of redress. The troubling features of this application of Rule 4.2 are observed in *In re Air Crash Disaster Near Roselawn, Indiana,* 909 F.Supp. 1116 (D.N.D.Ill.1995).[9] The purpose of preserving attorney/client integrity is not involved where there is no protected interest under the attorney/client relationship standard of *Upjohn.* The concern for the coercion of an employee who may make a statement and to protect against exploitation can be dealt with in the context of the conduct of

counsel and the trustworthiness of the statement.[10] The rule does not protect against organizational counsel's own misconduct in interviewing organizational employees. Further, Rule 4.2 creates an "ethical minefield" for counsel, Id. 909 F.Supp. at 1119) therefore, the court finds the suggested conclusion in *In re Air Crash Disaster,* supra not to be fully acceptable. Id. at 1119.[11]

What becomes apparent is that Rule 4.2, as Icon would have the court apply it, is not a matter of ethics but becomes, in reality, a rule of political and economic power that shelters organizations, corporations and other business enterprises from the legitimate less costly inquiry and fact gathering process sometimes necessary to make a legitimate assessment of whether a valid claim for relief exists. Rule 11 F.R.C.P. provides that an attorney may not file and serve a complaint unless "to the best of the person's knowledge, information and belief, found after an inquiry reasonable under the circumstances ... [that], the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." See *B.F. Goodrich v. Murtha,* 815 F.Supp. 539 (D.Conn.1993) (complaint must be grounded in fact); *In re Keegan Management Co., Securities Litigation,* 154 F.R.D. 237 (N.D.Cal.1994) (Federal Courts cannot tolerate complaints grounded solely on metaphysical inferences). The rigid application of Rule 4.2 to organizational contacts can frustrate the inquiry necessary to meet Rule 11, F.R.C.P. standards. Such a broad construction is irresponsible. Therefore, a construction of Rule 4.2 that is compatible with the objectives of Rule 11, F.R.C.P. is appropri-

---

**8.** It is simplistic and naive to think that merely asking organizational counsel for permission to speak to an employee would be any more effective in gathering evidence than a prosecutor asking permission of a criminal defense counsel to speak to a defendant. Seeking permission from a company attorney is not realistic, although permission from the court may be more efficacious, but the analysis is standardless. See *McCallum v. CSX Transp., Inc.,* 149 F.R.D. 104, 110 (N.D.N.C.1993).

**9.** Contact at issue in the *Air Crash Disaster* case occurred while the cases were before the court.

**10.** The extreme justification for the broad reading of Rule 4.2 is similar to the justification for denying rights of confrontation now protected under the Sixth Amendment. See *Walter Raleigh Trial,* 2 How St.Tr. 1 (1603).

**11.** The court need not address fully this matter because the analysis at this point is as to whether Rule 4.2 should have application in a prelitigation setting involving an organization.

ate. This supports a conclusion that as Rule 4.2 is now written for application in this court as to organizations, it should be held applicable only after litigation has been commenced and not to all levels of employees who could make an admission of evidence.

### The Impact of Bougé v. Smith's Management

In *Bougé* this court confronted the application of DR7–104(A)(1) and Rule 4.2 [12] in the context of a post litigation interview by a plaintiff of corporate employees. The court addressed the interpretation of the no contact rules in the corporate context. The court concluded that neither DR7–104(A)(1) or Rule 4.2 applied to interviews with low level corporate employees. The court observed the cost factor that would be increased in preventing counsel from conducting non-adversarial interviews. *Id.* at p. 562. The court also noted that restrictions on discovery should have a solid foundation in ethical considerations. *Id.* at p. 566. As recognized before, the broad construction of Rule 4.2 encouraged by the Comment and urged by Icon is not an ethical standard but an economic and social power immunization.

In the case of a corporation-employee communication restriction, the communication limitation should be evaluated and justified by the status of the relationship. The more important the employees position in developing corporate policy or in carrying out corporate strategy, the more justification exists for an ethical limitation or restriction on outside communication adverse to the cooperation. As the employee becomes merely a low level operational employee, the need for a restriction is significantly reduced and a limitation on external communication truly frustrates the truth and fact finding process. Low level employees are not and should not be slaves of the corporate structure. Although the term "servant" is used in Rule 801(d)(2)(D), F.R.E. involving corporate admissions, it does not mean the employee is a mere service unit of production totally under the control of the economic power of the corporate structure. If the employee has information adverse to corporate policy or practice which is at issue in any litigation, the employee must be free to speak and the courts should have access to the evidence. Any concept of ethics which is to the contrary must be premised on a very special justification. The admissions restriction portion of the comments to Rule 4.2 of the ABA Model Rules of Professional Conduct is not supported by such justification. Applying Wigmore's criteria this is not a restriction that ought to be sedulously fostered.
*Bougé*, supra, 132 F.R.D. at p. 566.

In *Bougé* the court indicated "the 'admissions' limitation in the comments to Rule 4.2 … is not a legitimate statement of ethics." *Id.* A survey of the various cases and the contexts in which a substantial part of the litigation over this issue has arisen verifies this conclusion. Motions to suppress, to strike counsel and other non-ethical but tactical trial advantages are what the parties seek. There is no indication that Icon has made a complaint about the alleged ethics violation of Weider's New York counsel to appropriate New York authorities. Rather, the ethics interest is subordinated to an effort to obtain some form of exclusionary relief. The argument of Icon is to treat corporate employees as a form of company property. The expansive comment is a throwback to an era in which corporations could completely dominate and control their employees in a litigation matter.

■ In *Bougé* this court expressly rejected the Rule 801(d)(2)(D) F.R.E. standard under Rule DR7–104(A)(1) or Rule 4.2 Id. at p. 567. The court indicated it believed the New York Court of Appeals' opinion in *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) was correct that an evidentiary admissions standard was not workable. The status of the person must be more directly associated with the legitimate attorney/client needs of the corporation before Rule 4.2 should be operative. In this

---

12. In *Bougé* the court considered Rule 4.2 as well as DR7–104(A)(1). In addition, because as noted before the Rules are virtually identical an interpretation as to DR7–104(A)(1) has application to Rule 4.2

regard, Icon has not met its burden of proof of showing such a relationship applied to Thompson. Thompson's position, status, and participation with Icon and its counsel has not been adequately shown.

The level at which Rule 4.2 should apply to corporate agents has invoked considerable discussion. Lidge, 45 Ark.L.Rev. *supra.* The range has been from a complete ban of any communication, which this court has rejected, to a control group standard, *Fair Automotive Repair, Inc. v. Car–X Service Systems Inc.,* 128 Ill.App.3d 763, 84 Ill.Dec. 25, 471 N.E.2d 554 (Ill.App.1984); *Shealy v. Laidlaw Bros.,* 34 Fair Empl.Prac.Cas. (BNA) 1223, 1984 WL 48968 (D.S.C.1984)) which is unduly limited. Other authorities have taken a more policy oriented approach. *Ceramco v. Lee Pharmaceuticals,* 510 F.2d 268 (2d Cir.1975). The inescapable conclusion is that the rule is ambiguous. *United States v. Ryans,* supra. 903 F.2d at 739; David A. Green, *Balancing Ethical Concerns Against Liberal Discovery: The Case of Rule 4.2 and the Problem of Loophole Lawyering,* 8 Georgetown Jnl. of Legal Ethics, 283, 293 (1995) (advocating a total ban on ex parte contacts in commercial litigation) (a position this court rejects as being unjust and putting form and pretense over substance). Thus, the positions of the courts are varied, See 31 *The Judges Journal,* 26 (Winter 1992). It is probably most appropriate to draw the line at some supervisory level. 45 Ark.L.Rev. 801, 868. Wolfram, *Modern Legal Ethics,* § 11.611–613. Recently, in *Cole v. Appalachian Power Company,* 903 F.Supp. 975 (S.D.W.Va.1995) the court set standards for the interpretation of Rule 4.2, but in doing so departed from the position of the highest court of the state where the federal court was located. See *Dent v. Kaufman,* 185 W.Va. 171, 174, 406 S.E.2d 68, 71 (1991). This could create problems for counsel by not knowing where the case was going to be litigated and which standard applied. This court, at least, believes it appropriate to support the Washington Supreme Court's observation as to Rule 4.2 in *Wright v. Group Health Hosp.,* 103 Wash.2d 192, 200, 691 P.2d 564, 569 (1984):

It] is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts.

The proper scope of Rule 4.2 would best be determined by a joint state/federal ethics committee. This is one way of getting a more precise rule that is uniformly applicable. See *Ex parte Communications With Employees of a Business Enterprise: The Need for a Bright Line Text,* 6 St.Johns J.Legal Commentary 399 (1991). Until this or some other approach, this court can only apply a reasonable balancing test as discussed in *Bougé* which requires some showing that the position of the person contacted was such that he could bind the corporation. *Niesig,* supra. In this case Icon has failed to show a violation of Rule 4.2 of the Utah Rules of Professional Responsibility as adopted by this court.

### Remedy

■ Icon, as a remedy for the alleged violation of Rule 4.2 by Weider, seeks suppression of evidence derived from the communication by Weider's attorneys' agents. It also seeks a limitation on the use of such evidence. The scope of the suppression which Icon seeks is similar to the scope of the exclusionary rule for violation of the Fourth Amendment, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), or the privilege against self-incrimination, *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). To some extent the request for a protective order is even broader.

An exclusionary policy frustrates truth and does not punish the ethical violation, but works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned. An ethical violation ought to be dealt with by sanctions against the errant attorney, except in special cases. *United States v. Dennis,* 843 F.2d 652 (2d Cir.1988) (appropriate remedy is disqualification of counsel for an ethical violation not exclusion of evidence).

In *United States v. Thomas,* supra, the court seemed to reject an exclusionary policy saying "A violation of the canon of ethics as here concerned need not be remedied by a

reversal of the case wherein it is violated." The court noted there was no constitutional violation. 474 F.2d at 112. The court suggested the matter was one for "ethical and administrative considerations" Id. Even in *United States v. Hammad,* supra, the Second Circuit found suppression to be inappropriate and an abuse of discretion when awarded by the trial court for a violation of DR7–104(A)(1). The preamble to the Model Code of Professional Responsibility adopted in Utah states the rules are to guide practicing attorneys. There is nothing suggesting a collateral sanction was contemplated. In *Ryans,* the court rejected a claim that a suppression was necessary or that otherwise the rule would provide no protection. "The argument overlooks the fact that exclusion of evidence is not the only possible remedy under the disciplinary rule. Violation of DR7–104(A)(1) may furnish a basis for sanctions against the offending attorneys." 903 F.2d at p. 740. See also *United States v. Adams,* 977 F.2d 596 (10th Cir.1992), unpublished, 1992 WL 279227 (4.2 rejected as a basis for suppression).

Icon has referred to *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. 412 (D.Utah 1991). The case does not support Icon's position. It merely *held* that ex parte communications with former employees were outside of Rule 4.2 restrictions. In *Shearson,* in the court's order, it was said that strict adherence to the court's ruling was "required and any evidence obtained in violation there of is subject to suppression." 139 F.R.D. at p. 148. However, there was no discussion of the need for an exclusionary policy and the comment was gratuitous dicta. Further, the court in *Shearson Lehman Bros.,* did not refer to or discuss *Thomas* or *Ryans* which are controlling precedent and had been decided when the *Shearson* opinion was issued. The caution to counsel in *Shearson Lehman* does not support an exclusionary policy in this case.

An exclusionary rule is an indirect sanction that sacrifices truth on the alter of advocacy rather than a more functional approach of imposing a direct sanction on the errant attorneys. It leads to excessive quibbling, tactical maneuvering and possible frustration of justice. Suppression is a costly remedy even under the Fourth Amendment. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Cameron & Lestegar, *The Exclusionary Rule: A Cost Benefit Analysis,* 101 F.R.D. 109 (1984). Further, there is a difference in the context of this case, between deterring counsel from ethical violations and deterring police officers from future violations of the Fourth Amendment. Any ethical violations that took place by New York counsel before litigation commenced should be dealt with by direct sanctions against counsel in the appropriate forum. Different counsel are involved in this case. If an ethical violation has occurred in New York, Icon is free to bring it to the attention of the proper authorities. Suppression and exclusion in this case effects little benefit to the profession and is not directly corrective of misconduct. See *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Normally, an exclusionary policy under the Fourth Amendment is inappropriate to the conduct of private persons, *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), it is inappropriate in most instances in private litigation as well. This is not the case to apply an exclusionary policy.

### *Alleged Violation of Rule 4.3 of the Utah Rules of Professional Conduct*

█ Rule 4.3, *Utah Rules of Professional Conduct* treats contact with unrepresented persons. Icon, by this argument, assumes Thompson was not represented, either in an individual capacity, which he was not, or as a corporate representative which has not been established. The invocation of Rule 4.3 accepts Thompson's status as that of a non-represented person. Under Rule 4.3 the lawyer, in dealing with such a person, is not to imply that the lawyer is not disinterested. However, Rule 4.3 may apply only to lawyers not investigators since the expectations are those of the unrepresented person dealing with a lawyer. It has been suggested the rule "should have no vicarious liability to lawyers supervising the activities of undercover investigators and testers, for the latter by definition do not represent themselves as

acting on behalf of a lawyer so they cannot engender expectations of the sort that Rule 4.3 is to protect." No unrepresented person is realistically likely to apply his or her expectations of lawyers to an investigator or tester. Rule 4.3 could apply, however, to the activities of an investigator who represented himself as acting on behalf of a lawyer. David B. Isbell and Lucantonio N. Salvi, *Ethical Responsibility of Lawyers for Deception by Undercover Investigators and Discrimination Testers: An Analysis of Provisions Prohibiting Misrepresentation Under the Model Rules of Professional Conduct,* 8 Georgetown Jnl. of Legal Ethics, 791, 825 (1995). Icon has not shown a basis for invocation of Rule 4.3 under this analysis.

■ However, the scope of Rule 4.3 need not be addressed for two reasons the Rule cannot be invoked by Icon. First, if there is any violation of 4.3, Thompson is the person whose interest would have been effected, not Icon's. Therefore, Icon has no standing to invoke the remedy it seeks. See infra p. 504.

Second, the conclusion on the application of the exclusionary request as to Rule 4.2 is applicable to Rule 4.3 and is reinforced because of Icon's lack of standing. *United States v. Padilla,* 508 U.S. 77, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993).

*Conclusion*

■ The court does not believe the remedy by suppression or a protective order sought by Icon is proper, except that Weider should make available for copying, or copies, of all tapes and documents obtained by Weider in its contacts with Thompson.[13] In addition, the court does not address Weider's argument that any contact with Thompson was justified because Weider's stock ownership gave it positions on Icon's Board of Directors and its inquiry was justified to determine if Icon was acting legally. Therefore,

**IT IS HEREBY ORDERED** that the motions of Icon and Fitness First d/b/a American Distributors, for a protective order and exclusion of evidence and other relief is denied, except for the requirement that Weider produce the documents and tapes of its investigation contacts with Thompson.

---

**13.** Weider has not attempted to defend against this request on the grounds that the material is protected by any work product privilege applicable to this litigation.