436 Mass. 347 (2002)                                              347

Messing, Rudavsky & Weliky, P.C. *v.* President and Fellows of Harvard College.

MESSING, RUDAVSKY & WELIKY, P.C. *vs.* PRESIDENT AND
FELLOWS OF HARVARD COLLEGE.

Suffolk. November 8, 2001. - March 19, 2002.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts, Practice of law.
*Attorney at Law,* Attorney-client relationship, Canons of ethics, Com-
munication with organization represented by counsel.

A law firm was entitled to review under G. L. c. 211, § 3, of a Superior Court
judge's order sanctioning the firm for violations of Mass. R. Prof. C. 4.2,
and its predecessor, S.J.C. Rule 3:07, Canon 7, DR 7-104 (A) (1), where
little guidance currently existed for attorneys in the area of professional
responsibility at issue, resolution of the issue would have widespread
implications for attorneys through the Commonwealth, and the issue might
not be presented in the ordinary course of litigation. [350-351]
Discussion of the application of Mass. R. Prof. C. 4.2, prohibiting an attorney
from communicating with a represented party in the absence of that party's
attorney, to a situation in which the attorney's ex parte communication is
to the employees of an organization represented by counsel. [351-354]
Discussion of various judicial interpretations in other jurisdictions that have
adopted the same or similar versions of Mass. R. Prof. C. 4.2, prohibiting
an attorney from communicating with a represented party in the absence of
that party's attorney, as to whether their own versions of the rule are
properly linked to the admissions exception to the hearsay rule, and as to
the precise scope of the rule as applied to organizations. [354-356]
This court interpreted Mass. R. Prof. C. 4.2, prohibiting an attorney from
communicating with a represented party in the absence of that party's at-
torney, to ban contact only with those employees of an organization, when
that organization is the represented party, who have the authority to com-
mit the organization to a position regarding the subject matter of the at-
torney's representation, who exercise managerial responsibility in the mat-
ter, or whose act or omission in connection with the matter could be
imputed to the organization for purposes of civil or criminal liability.
[356-360] CORDY, J., concurring in part and dissenting in part.
A law firm did not violate Mass. R. Prof. C. 4.2, prohibiting an attorney from
communicating with a represented party in the absence of that party's at-
torney, where the five employees of a represented organization interviewed
by the law firm were not involved in directing the litigation at bar or authoriz-
ing the organization to make binding admissions; where the employees were
not employees whose act or omission in connection with the matter could be
imputed to the organization for purposes of civil or criminal liability,
but rather were mere witnesses to the events that occurred; and

where none of the employees had managerial responsibility on behalf of the organization with regard to the subject of the representation. [360-361] CORDY, J., concurring in part and dissenting in part.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 17, 2001.

The case was reported by *Spina,* J.

*Wendy H. Sibbison* for the plaintiff.

*David C. Casey (Scott Moriarty* with him) for the defendant.

The following submitted briefs for amici curiae:

*John Leubsdorf,* of New York, for Teachers of Professional Responsibility.

*Jonathan J. Margolis & Paula A. Brantner* for National Employment Lawyers Association.

*Mary T. Sullivan & Donald J. Siegel* for AFL-CIO & others.

*Elaine R. Jones, Theodore M. Shaw, Norman J. Chachkin, James L. Cott & Robert H. Stroup* for NAACP Legal Defense & Educational Fund, Inc., & others.

*William C. Newman & Sarah R. Wunsch* for American Civil Liberties Union of Massachusetts.

*Luz Arevalo, Monica Halas, Carol R. Mallory, Allan G. Rodgers & Ernest Winsor* for Greater Boston Legal Services & another.

*Arthur G. Telegen, Jennifer W. Corinis, Richard Alfred, Seyfarth Shaw & Cynthia Amara* for Boston Area Management Attorneys Group & another.

*Thomas F. Reilly,* Attorney General, *Laura Maslow-Armand, Pamela L. Hunt & Hilary Weinert Hershman,* Assistant Attorneys General, for the Attorney General.

COWIN, J. The law firm of Messing, Rudavsky & Weliky, P.C.[1] (MR&W), appeals from an order of the Superior Court sanctioning the firm for violations of Mass. R. Prof. C. 4.2, 426 Mass. 1402 (1998), and its predecessor, S.J.C. Rule 3:07, Canon 7, DR 7-104 (A) (1), as appearing in 382 Mass. 786 (1981).

---

[1]Prior to April 1, 2001, Messing, Rudavsky & Weliky, P.C., was known as Messing & Rudavsky, P.C. The Superior Court's orders, challenged in this opinion, sanctioned the firm under its former name. Messing, Rudavsky, & Weliky, P.C., is the successor in interest to Messing & Rudavsky, P.C.

Both versions of the rule prohibit attorneys from communicating with a represented party in the absence of that party's attorney. This appeal raises the issue whether, and to what extent, the rule prohibits an attorney from speaking ex parte to the employees of an organization represented by counsel.[2] A judge in the Superior Court interpreted the rule to prohibit communication with any employee whose statements could be used as admissions against the organization pursuant to Fed. R. Evid. 801 (d) (2) (D), and sanctioned MR&W for its ethical breach. We vacate the order and remand for entry of an order denying the motion for sanctions.

On appeal, MR&W contends that the judge's construction of the rule is overly broad and results from an incorrect interpretation of the rule's commentary. In addition, MR&W contends that the judge lacked authority to issue sanctions for ethical violations, and that even if he had such authority, the attorney's fees sanction imposed by the judge constituted an abuse of discretion. Because we vacate the Superior Court judge's order on the basis that his interpretation of rule 4.2 and DR 7-104 (A) (1) was overly broad, we need not address MR&W's other contentions.

1. *Facts and procedural history.* From the stipulated facts, we distill the following. In August of 1997, MR&W filed a complaint against the President and Fellows of Harvard College (Harvard) with the Massachusetts Commission Against Discrimination (commission) on behalf of its client, Kathleen Stanford. Stanford, a sergeant with the Harvard University police department (HUPD), alleged that Harvard and its police

---

[2]We acknowledge the amicus briefs filed by Teachers of Professional Responsibility, National Employment Lawyers Association, AFL-CIO (joined by the Massachusetts AFL-CIO; the American Federation of State, County and Municipal Employees, Council 93; Service Employees International Union Local 509; and United Food & Commercial Workers Local 328), NAACP Legal Defense & Educational Fund, Inc. (joined by Lawyers' Committee for Civil Rights Under Law, Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association, Coalition of Labor Union Women, Gay & Lesbian Advocates & Defenders, Maine Employment Lawyers Association, and the Disability Law Center), American Civil Liberties Union of Massachusetts, Greater Boston Legal Services (joined by Massachusetts Law Reform Institute), Boston Area Management Attorneys Group (joined by New England Legal Foundation) and the Attorney General.

chief, Francis Riley, discriminated against her on the basis of gender and in reprisal for earlier complaints of discrimination. MR&W represented Stanford, and Harvard was represented before the commission by in-house counsel, and thereafter by a Boston law firm. Following the institution of the suit, MR&W communicated ex parte with five employees of the HUPD: two lieutenants, two patrol officers, and a dispatcher. Although the two lieutenants had some supervisory authority over Stanford, it was not claimed that any of the five employees were involved in the alleged discrimination or retaliation against her or exercised management authority with respect to the alleged discriminatory or retaliatory acts.

In response to a motion by Harvard, the commission ruled that MR&W's ex parte contacts with all five employees violated rule 4.2, but declined to issue sanctions for these violations. MR&W removed the case to the Superior Court, where Harvard filed a motion seeking sanctions for the same violations of rule 4.2 on which the commission had previously ruled. The Superior Court judge then issued a memorandum of decision and order holding that MR&W violated the rule with respect to all five employees, prohibiting MR&W from using the affidavits it had procured during the interviews, and awarding Harvard the attorney's fees and costs it had expended in litigating the motion, in a later order calculated as $94,418.14.[3]

MR&W and Stanford appealed both orders to a single justice of the Appeals Court pursuant to G. L. c. 231, § 118, first par. The single justice denied the petition and declined to report the matter to the full bench of the Appeals Court. MR&W filed a complaint with the single justice of this court pursuant to G. L. c. 211, § 3, who reserved and reported the matter to the full court.

2. *Jurisdiction.* As a threshold matter, Harvard asserts that MR&W is not entitled to relief under G. L. c. 211, § 3. General Laws c. 211, § 3, provides: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other

---

[3]Harvard claimed fees of $152,255.96. The judge reduced this amount after deducting fees incurred in the proceedings before the commission, and subtracting a portion of the billing rate as excessive.

remedy is expressly provided . . . ." G. L. c. 211, § 3. This power of review is discretionary with the court and will be "exercised only in 'the most exceptional circumstances.' " *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978).

Generally, parties seeking review under G. L. c. 211, § 3, must demonstrate both a violation of their substantive rights and the unavailability of adequate relief through the ordinary appellate process. *Id.* Although Harvard asserts that MR&W has failed to demonstrate either of these requirements,[4] G. L. c. 211, § 3, grants us "general superintendence of the administration of all courts of inferior jurisdiction." This provision permits us to proceed on the merits where a party raises "an important issue with implications for the administration of justice, and one that is not likely to be presented in the ordinary course of litigation." *Bradford* v. *Knights*, 427 Mass. 748, 750 (1998). Because the language of the rule leaves open "just which employees of an entity are or are not out of bounds," Wilkins, The New Massachusetts Rules of Professional Conduct: An Overview, 82 Mass. L. Rev. 261, 265 (1997), little guidance currently exists for lawyers as to what contact is appropriate. Our resolution of the issue will have widespread implications for attorneys throughout the Commonwealth. Further, the issue may not be presented in the ordinary course of litigation. Given the Superior Court's decision, attorneys, apprehensive about crossing ethical boundaries, may refrain from contacting employees of a represented organization. Therefore, we resolve the merits of MR&W's claim.

3. *Interpretation of Rule 4.2 of the Massachusetts Rules of Professional Conduct.*

a. *An overview.* Disciplinary Rule 7-104 (A) (1) provides:

"During the course of his representation of a client a lawyer shall not: . . . Communicate or cause another to

---

[4]Arguably, MR&W had adequate relief through the ordinary appellate process. Orders requiring counsel to pay attorney's fees and sanctions are reviewable on appeal after final judgment. See *Adams* v. *Cumberland Farms, Inc.*, 420 Mass. 807, 808 (1995) (order requiring plaintiff's counsel to pay attorney's fees by specified dates reviewable on appeal).

352 436 Mass. 347 (2002)

Messing, Rudavsky & Weliky, P.C. *v.* President and Fellows of Harvard College.

communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

As of January 1, 1998, DR 7-104 (A) (1) was superseded by rule 4.2. Massachusetts, like most States, adopted this rule verbatim from the American Bar Association (ABA) Model Rules of Professional Conduct. Rule 4.2 provides:

"In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

The rule has been justified generally as "preserv[ing] the mediating role of counsel on behalf of their clients . . . protect[ing] clients from overreaching by counsel for adverse interests," *Pratt* v. *National R.R. Passenger Corp.*, 54 F. Supp. 2d 78, 79 (D. Mass. 1999), and "protecting the attorney-client relationship." *In re Air Crash Disaster near Roselawn Ind.*, 909 F. Supp. 1116, 1121 (N.D. Ill. 1995). See *Orlowski* v. *Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 727 (N.D. Ill. 1996); *Brown* v. *St. Joseph County*, 148 F.R.D. 246, 249 (N.D. Ind. 1993); *Wright* v. *Group Health Hosp.*, 103 Wash. 2d 192, 196 (1984).

Neither version of the rule explicitly addresses the scope of the prohibition when the represented person is an organization. When the represented person is an individual, there is no difficulty determining when an attorney has violated the rule; the represented person is easily identifiable. In the case of an organization, however, identifying the protected class is more complicated.

Because an organization acts only through its employees, the rule must extend to some of these employees. However, most courts have rejected the position that the rule automatically prevents an attorney from speaking with all employees of a represented organization. See *Terra Int'l, Inc.* v. *Mississippi Chem. Corp.*, 913 F. Supp. 1306, 1320 (N.D. Iowa 1996) (noting rule banning ex parte contacts with all current employees has been rejected by courts that have considered it); *Shearson*

*Lehman Bros.* v. *Wasatch Bank*, 139 F.R.D. 412, 416 (D. Utah 1991); *State* v. *CIBA-GEIGY*, 247 N.J. Super. 314, 323-324 (1991) (noting only one decision had adopted blanket rule prohibiting contact with all former and current employees, and that other cases which had applied that approach were later vacated and withdrawn); *Niesig* v. *Team I*, 76 N.Y.2d 363, 371 (1990); *Strawser* v. *Exxon Co. U.S.A.*, 843 P.2d 613, 619-620 (Wyo. 1992).

Most of MR&W's contacts with the Harvard employees took place in late 1997, when DR 7-104 (A) (1) was still the operative rule. However, the Superior Court found that MR&W also made "minimal communication" in early 1998, and sanctioned MR&W for violations of both the old and new versions of the rule. Rule 4.2 uses the phrase "person the lawyers knows to be represented," while DR 7-104 (A) (1) uses the phrase "party [a lawyer] knows to be represented." By replacing the word "party" with "person," the drafters of rule 4.2 arguably intended to prohibit contact with a broader class than did DR 7-104 (A) (1). However, both versions of the rule consider an organization to be a "person" or "party," and thus prohibit ex parte contact with at least some of the organization's employees. See, e.g., *Niesig* v. *Team I, supra*; Mass. R. Prof. C. 9.1 (h), 426 Mass. 1432 (1998) (defining "[p]erson" to include a corporation, association, trust, partnership, and any other organization or legal entity). In the context of contact with the employees of a represented organization, courts have interpreted the two versions of the rule to prohibit the same conduct. See Hurley *vs.* Modern Cont. Constr. Co., Civil Action No. 94-11373-RBC (D. Mass. Feb. 19, 1999); *Johnson* v. *Cadillac Plastic Group, Inc.*, 930 F. Supp. 1437, 1440 (D. Colo. 1996); *Strawser* v. *Exxon Co., U.S.A., supra* at 617 n.5.[5]

The comment to rule 4.2 provides guidance in the case of a represented organization. Because both versions of the rule prohibit essentially the same conduct, the comment is instructive (although not controlling) in determining the scope of both the old and new versions of the rule. See Mass. R. Prof. C.

---

[5]All references will be to Mass. R. Prof. C. 4.2, 426 Mass. 1402 (1998), although any discussion is equally applicable to S.J.C. Rule 3:07, Canon 7, DR 7-104 (A) (1), as appearing in 382 Mass. 86 (1981).

Scope [9], 426 Mass. 1305 (1998) ("The Comments are intended as guides to interpretation, but the text of each Rule is authoritative").

According to comment [4] to rule 4.2, an attorney may not speak ex parte to three categories of employees: (1) "persons having managerial responsibility on behalf of the organization with regard to the subject of the representation"; (2) persons "whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability"; and (3) persons "whose statement may constitute an admission on the part of the organization."[6] Mass. R. Prof. C. 4.2 comment [4], 426 Mass. 1403 (1998).

b. *The Superior Court judge's decision.* The judge held that all five employees interviewed by MR&W were within the third category of the comment. He reached this result by concluding that the phrase "admission" in the comment refers to statements admissible in court under the admissions exception to the rule against hearsay. The Commonwealth's version of this rule was defined in *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418 (1988), where we held that a court may admit a "statement by [the party's] agent or servant concerning a matter within the scope of [the] agency or employment, made during the existence of the relationship." *Id.* at 420, quoting Proposed Mass. R. Evid. 801 (d)(2)(D). This rule is identical to Fed. R. Evid. 801 (d)(2)(D). Because the comment includes any employee whose statement *may* constitute an admission, this interpretation would prohibit an attorney from contacting any current employees of an organization to discuss any subject within the scope of their employment. This is, as the Superior Court judge admitted, a rule that is "strikingly protective of corporations regarding employee interviews."[7]

c. *Other interpretations of rule 4.2.* Harvard contends that the

---

[6]Massachusetts adopted the commentary to rule 4.2 proposed in the ABA Model Rules of Professional Conduct, except that the Massachusetts version adds the phrase "with regard to the subject of the representation" to the first category of the comment.

[7]The judge understandably relied on and followed decisions issued by a judge and a magistrate of the United States District Court for the District of Massachusetts in reaching his decision. No prior Massachusetts State court decision had construed the scope of the rule.

third category of the comment is an unambiguous reference to the admissions exception to the hearsay rule. However, other jurisdictions that have adopted the same or similar versions of rule 4.2 are divided on whether their own versions of the rule are properly linked to the admissions exception to the hearsay rule, and disagree about the precise scope of the rule as applied to organizations. See, e.g., *Orlowski* v. *Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 728 (1996) ("Courts have debated at length which current corporate employees constitute represented parties . . ."); *Niesig* v. *Team I*, 76 N.Y.2d 363, 371 (1990) ("The many courts, bar associations and commentators that have balanced the competing considerations have evolved various tests, each claiming some adherents, each with some imperfection . . .").

Some jurisdictions have adopted the broad reading of the rule endorsed by the judge in this case. See, e.g., *Weibrecht* v. *Southern Ill. Transfer, Inc.*, 241 F.3d 875 (7th Cir. 2001); *Cole* v. *Appalachian Power Co.*, 903 F. Supp. 975 (S.D.W. Va. 1995); *Brown* v. *St. Joseph County*, 148 F.R.D. 246, 254 (N.D. Ind. 1993). Courts reaching this result do so because, like the Superior Court, they read the word "admission" in the third category of the comment as a reference to Fed. R. Evid. 801 (d)(2)(D) and any corresponding State rule of evidence. *Id.* This rule forbids contact with practically all employees because "virtually every employee may conceivably make admissions binding on his or her employer." *In re Air Crash Disaster near Roselawn, Ind.*, 909 F. Supp. 1116, 1121 (N.D. Ill. 1995). However, some of the courts that have adopted this interpretation have expressed reservations. See *Pratt* v. *National R.R. Passenger Corp.*, 54 F. Supp. 2d 78, 80 (D. Mass. 1999) ("This [c]ourt has previously highlighted some of the negative aspects of ethical rules prohibiting ex parte communications with individuals in the corporate context"); Hurley *vs.* Modern Cont. Constr. Co., *supra* (stating that linking rule to rule of evidence may frustrate "truth-seeking process").

At the other end of the spectrum, a small number of jurisdictions have interpreted the rule narrowly so as to allow an attorney for the opposing party to contact most employees of a represented organization. These courts construe the rule to

restrict contact with only those employees in the organization's "control group," defined as those employees in the uppermost echelon of the organization's management. See *Johnson* v. *Cadillac Plastic Group, Inc.*, 930 F. Supp. 1437, 1442 (D. Colo. 1996); *Fair Automotive Repair, Inc.* v. *Car-X Serv. Sys., Inc.*, 128 Ill. App. 3d 763, 771 (1984) (applying rule only to "top management persons who had the responsibility of making final decisions"); *Wright* v. *Group Health Hosp.*, 103 Wash. 2d 192, 200 (1984) (applying rule only to "those employees who have the legal authority to 'bind' the corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the corporation").

Other jurisdictions have adopted yet a third test that, while allowing for some ex parte contacts with a represented organization's employees, still maintains some protection of the organization. The Court of Appeals of New York articulated such a rule in *Niesig* v. *Team I*, 76 N.Y.2d 363 (1990), rejecting an approach that ties the rule to Fed. R. Evid. 801 (d)(2)(D). Instead, the court defined a represented person to include "employees whose acts or omissions in the matter under inquiry are binding on the corporation . . . or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel." *Id.* at 374. Other jurisdictions have subsequently adopted the *Niesig* test. See, e.g., *Weider Sports Equip. Co.* v. *Fitness First, Inc.*, 912 F. Supp. 502 (D. Utah 1996); *Branham* v. *Norfolk & W. R.R.*, 151 F.R.D. 67, 70-71 (S.D.W. Va. 1993); *State* v. *CIBA-GEIGY Corp.*, 247 N.J. Super. 314, 325 (1991); *Dent* v. *Kaufman*, 185 W. Va. 171 (1991); *Strawser* v. *Exxon Co., U.S.A.*, 843 P.2d 613 (Wyo. 1992). In addition, the Restatement (Third) of the Law Governing Lawyers endorses this rule. See Restatement (Third) of Law Governing Lawyers § 100 Reporter's Note comment e, at 98 (1998).

d. *Our interpretation of rule 4.2.* We adopt a test similar to that proposed in *Niesig* v. *Team I, supra.* Although the comment's reference to persons "whose statement may constitute an admission on the part of the organization" was most likely intended as a reference to Fed. R. Evid. 801 (d)(2)(D), this interpretation would effectively prohibit the questioning of all

employees who can offer information helpful to the litigation. We reject the comment as overly protective of the organization and too restrictive of an opposing attorney's ability to contact and interview employees of an adversary organization.

We instead interpret the rule to ban contact only with those employees who have the authority to "commit the organization to a position regarding the subject matter of representation." See *Johnson* v. *Cadillac Plastic Group, Inc.*, *supra* at 1442; Restatement (Third) of Law Governing Lawyers, *supra* at § 100 comment e. See also Ethics 2000 Commission Draft for Public Comment Model Rule 4.2 Reporter's Explanation of Changes (Feb. 21, 2000) (recommending deletion of the third category of the comment).[8] The employees with whom contact is prohibited are those with "speaking authority" for the corporation who "have managing authority sufficient to give them the right to speak for, and bind, the corporation." *Wright* v. *Group Health Hosp.*, *supra* at 201. Employees who can commit the organization are those with authority to make decisions about the course of the litigation, such as when to initiate suit, and when to settle a pending case. See Restatement (Third) of the Law Governing Lawyers, *supra* at § 100 comment e, at 93 (employees who have the power to make binding evidentiary admissions are "analogous to . . . person[s] who possess[] power to settle a dispute on behalf of the organization"). We recognize that this test is a retrenchment from the broad prohibition on employee contact endorsed by the comment.

This interpretation, when read in conjunction with the other two categories of the comment, would prohibit ex parte contact only with those employees who exercise managerial responsibility in the matter, who are alleged to have committed the wrongful acts at issue in the litigation, or who have authority on behalf of the corporation to make decisions about the course of the litigation. This result is substantially the same as the *Niesig* test because it "prohibit[s] direct communication . . . 'with those officials . . . who have the legal power to bind the

---

[8]The ABA commission established to review and make recommendations concerning improvements to the Model Rules is commonly known as the Ethics 2000 Commission.

corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer . . . or whose own interests are directly at stake in a representation." *Niesig* v. *Team I, supra* at 374, quoting C. Wolfram, Modern Legal Ethics § 11.6, at 613 (1986).

Our test is consistent with the purposes of the rule, which are not to "protect a corporate party from the revelation of prejudicial facts," *Dent* v. *Kaufman, supra* at 175, quoting *Wright* v. *Group Health Hosp., supra* at 200, but to protect the attorney-client relationship and prevent clients from making ill-advised statements without the counsel of their attorney. Prohibiting contact with all employees of a represented organization restricts informal contacts far more than is necessary to achieve these purposes. See *Niesig* v. *Team I, supra* at 372-373. The purposes of the rule are best served when it prohibits communication with those employees closely identified with the organization in the dispute. The interests of the organization are adequately protected by preventing contact with those employees empowered to make litigation decisions, and those employees whose actions or omissions are at issue in the case. We reject the "control group" test, which includes only the most senior management, as insufficient to protect the "principles motivating [Rule 4.2]." See *id.* at 373. The test we adopt protects an organizational party against improper advances and influence by an attorney, while still promoting access to relevant facts. See *id.* at 373-374. The Superior Court's interpretation of the rule would grant an advantage to corporate litigants over nonorganizational parties. It grants an unwarranted benefit to organizations to require that a party always seek prior judicial approval to conduct informal interviews with witnesses to an event when the opposing party happens to be an organization and the events at issue occurred at the workplace.

While our interpretation of the rule may reduce the protection available to organizations provided by the attorney-client privilege, it allows a litigant to obtain more meaningful disclosure of the truth by conducting informal interviews with certain employees of an opposing organization. Our interpretation does not jeopardize legitimate organizational interests because it continues to disallow contacts with those members of

the organization who are so closely tied with the organization or the events at issue that it would be unfair to interview them without the presence of the organization's counsel. Fairness to the organization does not require the presence of an attorney every time an employee may make a statement admissible in evidence against his or her employer. The public policy of promoting efficient discovery is better advanced by adopting a rule which favors the revelation of the truth by making it more difficult for an organization to prevent the disclosure of relevant evidence.

Harvard argues that adopting the Superior Court's interpretation of rule 4.2 will not prevent parties from conducting informal interviews with an organization's employees, but will instead simply force them to seek prior judicial approval. However, if we adopt such a rule, too often in cases involving a corporate party the court will be asked to decide the extent of informal interviews permitted. This will result in extensive litigation before the underlying case even begins, and would clearly favor the better-financed party. See, e.g., Phillips-Farr *vs.* Commonwealth, Suffolk Superior Court, No. 98-2218-F (Nov. 16, 2001).

Our decision may initially result in some increased litigation to define exactly which employees fall within the bounds of the rule. Although "a bright-line rule" in the form of a "control group" test or a blanket ban on all employee interviews would be easier to apply, the rule we adopt is, as discussed above, fair, and will allow for ex parte interviews without prior counsel's permission when an employee clearly falls outside of the rule's scope. See *Dent* v. *Kaufman, supra* at 175 (adopting *Niesig* test although "control group" test would be more straightforward).

The dissent argues that the *Niesig* test is not transferable to this jurisdiction because the test was adopted in the context of New York's narrower rule on employee admissions, which allows fewer employee statements to be admitted as admissions against the employer than the Massachusetts rule. See *Niesig* v. *Team I, supra* at 374. The limits of the ethical rule are not dictated by the breadth or narrowness of local evidentiary rules. While it is true that New York has adopted a more limited rule of evidence regarding admissions, this fact does not mandate

that we adopt a rule with greater protection of organizational employees. The *Niesig* court adopted the test after balancing the competing interests of organizational litigants and the interests of the parties who oppose them; the court's decision was not rooted in its recognition that New York has a more limited rule of evidence. *Id.* at 373-375. For the reasons described above, the *Niesig* test is sound regardless of its basis.

The dissent also complains of "a distinct disadvantage to the organizational parties" as a result of our construction of the rule because "[i]n the nonorganizational context, a witness's hearsay statement could not be a vicarious admission of the defendant, yet in the organizational context it could." *Post* at 365. We do not discern a meaningful distinction. The otherwise hearsay statements of the hypothetical witnesses posited by the dissent become admissible in evidence because of an agency relationship that exists between the witness and the party against whom the statement is offered. It is because of that agency relationship that the witness's statement is deemed to be the statement of his principal and is thus admissible. This is true both in an organizational as well as a nonorganizational context, given that individuals as well as organizations can have agents who may make statements attributable to them. If such agents come within the protected categories that we have delineated, their principals may insist that they not be approached by adverse counsel without prior permission. If they do not come within such categories, then they may provide information without such restriction whether they are agents of an organization or of an individual. The fact that organizations more often use agents who make admissible statements means only that there may be more people who may speak authoritatively for organizations than for individuals. It does not alter the principles that underlie what we believe is a desirable shift in emphasis in the direction of truth seeking.

4. *Applying rule 4.2 to the employees interviewed by MR&W.* The five Harvard employees interviewed by MR&W do not fall within the third category of the comment as we have construed it. As employees of the HUPD, they are not involved in directing the litigation at bar or authorizing the organization to make binding admissions. In fact, Harvard does not argue

that any of the five employees fit within our definition of this category.

The Harvard employees are also not employees "whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability." Mass. R. Prof. C. 4.2 comment [4]. Stanford's complaint does not name any of these employees as involved in the alleged discrimination. In fact, in an affidavit she states that the two lieutenants "had no role in making any of the decisions that are the subject of my complaint of discrimination and retaliation," and Harvard does not refute this averment. All five employees were mere witnesses to the events that occurred, not active participants.

We must still determine, however, whether any of the interviewed employees have "managerial responsibility on behalf of the organization with regard to the subject of the representation." Mass. R. Prof. C. 4.2 comment [4]. Although the two patrol officers and the dispatcher were subordinate to Stanford and had no managerial authority, the two lieutenants exercised some supervisory authority over Stanford. However, not all employees with some supervisory power over their coworkers are deemed to have "managerial" responsibility in the sense intended by the comment. See *Orlowski* v. *Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 729 (N.D. Ill. 1996). "[S]upervision of a small group of workers would not constitute a managerial position within a corporation." *Id.*, quoting *Carter-Herman* v. *Philadelphia*, 897 F. Supp. 899, 904 (E.D. Pa. 1995). Even if the two lieutenants are deemed to have managerial responsibility, the Massachusetts version of the comment adds the requirement that the managerial responsibility be in "regard to the subject of the representation." Mass. R. Prof. C. 4.2 comment [4]. Thus, the comment includes only those employees who have supervisory authority over the events at issue in the litigation. There is no evidence in the record that the lieutenants' managerial decisions were a subject of the litigation. The affidavits of the two lieutenants indicate that they did not complete any evaluations or offer any opinions of Stanford that Chief Riley considered in reaching his decisions.

5. *Conclusion.* Because we conclude that rule 4.2 did not

prohibit MR&W from contacting and interviewing the five HUPD employees, we vacate the order of the Superior Court judge and remand the case for the entry of an order denying the defendant's motion for sanctions.

*So ordered.*

CORDY, J. (concurring in part and dissenting in part). I concur that the financial sanction levied against Messing, Rudavsky & Weliky, P.C., must be set aside, but do so for reasons different from those set forth in the court's opinion. I disagree with the court's interpretation of Mass. R. Prof. C. 4.2, 426 Mass. 1402 (1998), and its comment that became effective on January 1, 1998, and therefore dissent from its holding in that regard.

*Rule 4.2.* Whatever the merits of the interpretation that the court today gives rule 4.2, it is not consistent with the rule and the comment that we adopted in 1998, or its predecessor, S.J.C. Rule 3:07, Canon 7, DR 7-104 (A) (1), as appearing in 382 Mass. 786 (1981) (DR 7-104 [A] [1]), and creates a troubling inconsistency in the way we treat organizations in our adversary system.

I begin with the premise that organizations have the right to be represented effectively by counsel to the same extent as individuals, while recognizing that organizations act through agents and employees, thus complicating the question of who the represented party is when it becomes, or is about to become, the subject of a legal proceeding. In this context the answer to the question has significant implications for defining and establishing the parameters of the attorney-client relationship, and for determining whether and to what extent actions and statements of individuals will be imputed to it in the legal proceedings. The answer to the same question also informs the meaning of the provision in our code of professional conduct that prohibits attorneys from having ex parte communication with opposing parties (or persons) they know to be represented by counsel (the no-contact rule), the essence of DR 7-104 (A) (1) and rule 4.2.

It strikes me that the answer ought to be as close to being a single and consistent one as we can make it. This is particularly

critical in the context of determining on the one hand whose actions and statements will be attributed to the organization in litigation, and on the other hand who in the organization is represented by counsel for purposes of the no-contact rule now embodied in rule 4.2. The purpose of the no-contact rule, after all, is to ensure the effective assistance of counsel by preserving counsels' mediating role on behalf of their clients, protecting clients from overreaching by counsel for adverse interests, and protecting the attorney-client relationship by preventing clients from making ill-advised statements without the advice of their attorney. There are few responsibilities more central to the effective representation of organizations (or individuals) than being in a position to advise and counsel them when they are being asked by opposing counsel to make statements that can be used against them to establish liability in litigation.

It is in this framework that, in 1982, the Committee on Professional Ethics of the Massachusetts Bar Association issued Opinion No. 82-7, interpreting DR 7-104 (A) (1), as it applied to ex parte contacts by opposing counsel with employees of an organization. The opinion concluded that a lawyer could not interview current employees of such a party without the consent of opposing counsel "where the proposed interview concerns matters within the scope of the employee's employment." The ethics committee reasoned that the principal interest reflected in DR 7-104 (A) (1) is the party's right to "effective representation of counsel" that can be guarded adequately only by viewing all present employees of an organization as parties where the proposed interview concerned matters within the scope of their employment. It further reasoned that effective representation requires that the attorney aid his client both to avoid procedural pitfalls and to present truthful statements in the most effective manner. Finally, it underscored that the position it was adopting was in accord with the law of evidence "which recognizes an exception to the hearsay rule as to 'a statement by [an] agent or servant concerning the matter within the scope of his agency or employment.' " "This rule binds the corporation with respect to admissions by employees far beyond the 'control group' of the corporation." Accordingly, it concluded that the definition of a "represented party" for purposes of

DR 7-104 (A) (1) needed to be consistent with the reach of the evidentiary rule.

This opinion, while it made eminent sense, was not fully embraced by the few Massachusetts courts (all Federal) which had occasion to consider DR 7-104 (A) (1) in the context of petitions by parties to allow or prohibit ex parte communication with employees during discovery.[1] These courts, while generally acknowledging the reasoning of Opinion No. 82-7, often concluded that in the absence of specific language in the rule regarding this subject, the better test was to balance, on a case by case basis, the competing interests of "effective representation," and the need, largely by plaintiffs, to gather facts informally, unpolished or influenced by counsel for the corporate opposition. This case-by-case balancing was eventually criticized in 1990 in Siguel *vs.* Trustees of Tufts College, U.S. Dist. Ct., Civ. A. No. 88-0626-Y (D. Mass. 1990), as being wasteful of judicial resources, running the risk of treating similarly situated parties differently, and, most importantly, providing no clear guidance on ethical behavior to attorneys who needed to act and rely on that guidance every day. The court called on the Supreme Judicial Court to address the issue and provide clarity to the rule.[2]

Although it took several years, this court eventually addressed the issue when, after comment and hearings, it adopted rule 4.2 and its comment. The rule was adopted with the full knowledge of Opinion No. 82-7 and its interpretation of DR 7-104 (A) (1), with full knowledge of its 1988 decision in *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418 (1988), adopting those portions of Proposed Mass. R. Evid. 801 (d)(2)(D) that made hearsay statements of employees admissible as vicarious admissions of their employers, and after hearing and considering the concerns of many lawyers (including the plaintiff law firm), that, if the court adopted rule 4.2 and its comment without amendment it

---

[1]See, e.g., *Morrison* v. *Brandeis Univ.*, 125 F.R.D. 14 (D. Mass. 1986); *Mompoint* v. *Lotus Dev. Corp.*, 110 F.R.D. 414 (D. Mass 1986); Siguel *vs.* Trustees of Tufts College, U.S. Dist. Ct., Civ. A. No. 88-0626-Y (D. Mass. 1990); Bruce *vs.* Silber, U.S. Dist. Ct., Civ. A. No. 88-2588-H (D. Mass. 1989).

[2]The Local Rules of the United States District Court for the District of Massachusetts (2001) follow the disciplinary rules promulgated by the Supreme Judicial Court, formerly including DR 7-104 (A) (1), as appearing in 382 Mass. 786 (1981), and now Mass. R. Prof. C. 4.2, 426 Mass. 1402 (1998).

would be adopting the view expounded in Opinion No. 82-7.[3] Even the court acknowledges that the adopted language in the comment prohibiting contact with persons "whose statement may constitute an admission on the part of the organization" was "most likely" intended as a reference to Fed. R. Evid. 801 (d)(2)(D). *Ante* at 356.

In this context it is painful to see the court now claim that, when it adopted the commentary, it did not intend its consequence; a consequence that merely ensures that organizations are as effectively represented by counsel as individuals. We should not shrink from what is a perfectly reasonable balancing of the equities.

In its opinion, the court states that to interpret the rule and commentary as adopted would grant an advantage to organizational litigants over nonorganizational litigants because, inter alia, as concerns a nonorganizational defendant, witnesses to an event could be interviewed without court approval, but if the defendant were an organization and the witnesses were employees, those witnesses could not be interviewed without court approval (assuming the interview concerned matters within the scope of their employment). *Ante* at 358. This observation misses the point. The reason that witnesses to an event would be, and should be, treated differently is precisely because the consequences of their interviews are treated differently. In the nonorganizational context, a witness's hearsay statement could not be a vicarious admission of the defendant, yet in the organizational context it could. The scope of the no-contact rule should be tailored to the legal consequences of the contact because the purpose of the rule is to ensure the effective legal representation of counsel. Our ruling today upsets the balance created by the rule and commentary and creates a distinct disadvantage to the organizational parties.

*The* Niesig v. Team I *test.* For purposes of the no-contact rule, the court now adopts the definition of a represented party

---

[3]Subsequent to our adoption of rule 4.2 and its comment, a Federal magistrate held that the rule now clearly prohibits contact with employees of a represented organization regarding matters within the scope of their employment. *Hurley v. Modern Cont. Constr. Co.*, 77 F.Supp.2d 183 (D. Mass. 1999).

explicated by the New York Court of Appeals in *Niesig* v. *Team I*, 76 N.Y.2d 363 (1990). That definition, in the organizational context, includes only those "employees whose acts or omissions in the matter under inquiry are binding on the corporation . . . or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel." *Id.* at 374. The court also notes that the *Niesig* test is consistent with the position taken in the Restatement (Third) of the Law Governing Lawyers § 100 Reporter's Note comment e (1998). The Restatement, in turn, also relies largely on the *Niesig* opinion to justify its position.

A close reading of the *Niesig* case, however, casts doubt on the transferability of its test to Massachusetts. First, the *Niesig* court was interpreting DR 7-104 (A) (1), not rule 4.2 and its comment. Second, as the New York court points out, the rule it adopts "is rooted in developed concepts of the law of evidence and the law of agency," as those concepts have developed under New York law. For this reason, it cites and specifically rejects the breadth of the rule described in Opinion No. 82-7, which the Massachusetts Bar Association justified, in part, by reference to Massachusetts' rules of evidence permitting statements of employees, made within the scope of their employment, to operate as admissions of their employer. In rejecting Opinion No. 82-7, the New York Court simply states that the rule of evidence in New York is different on this point, *id.* at 374, citing *Loschiavo* v. *Port. Auth. of N.Y. & N.J.*, 58 N.Y.2d 1040 (1983). There, the *Loschiavo* court held that under New York Rules of Evidence, "the hearsay statement of an agent is admissible against his employer under the admissions exception to the hearsay rule only if the making of the statement is an activity within the scope of his authority." *Id.* at 1041. In other words, only if the employee has the authority to speak for the organization. The *Niesig* court, therefore, did not have to grapple with or even consider the challenges posed to providing effective assistance of counsel to an organization, in the context of a State which has a far more expansive rule concerning what constitutes an admission of an organization for evidentiary purposes.

The *Niesig* decision in turn, cites to another State Supreme

Court decision to support its claim that the rule it was adopting was similar to that adopted by courts throughout the country. *Id.* at 375 & n.5. In that case, *Wright* v. *Group Health Hosp.*, 103 Wash. 2d 192 (1984), the Supreme Court of Washington adopted what it called the "managing-speaking" agent test, in interpreting DR 7-104 (A) (1). This test is indeed very similar to that which New York adopted in *Niesig* six years later. But as the Federal magistrate points out in *Morrison* v. *Brandeis Univ.*, 125 F.R.D. 14 (D. Mass. 1989), when it rendered the *Wright* decision, the Supreme Court of Washington "had no need to consider the effect of this [evidentiary rule regarding admissions], and, in fact, did not mention it. . . . So far as it appears, Washington had not adopted a rule of evidence which has the broader test as is found in [Fed. R. Evid. 801 (d)(2)(D)]." *Id.* at 17.

In these circumstances, it seems to me that we should not be so quick to adopt the position of States with very different jurisprudential landscapes, and disown a rule that makes good sense in the Commonwealth. Rather, we should work to ensure that the reach of the rule does not exceed the limits necessary to its purpose. This can be accomplished in two ways. First, by making it clear that the prohibition against communicating with persons whose statements may constitute an admission on the part of their organization (1) does not preclude counsel from contacting all employees of a represented organization and (2) only applies to communications with employees about matters within the scope of their employment that would be admissible as vicarious admissions of the organization in the particular controversy that is the subject of the representation. Second, by demonstrating that we intend narrowly to interpret the qualifying factor, i.e., what matters are within the scope of an individual's employment, for purposes of this rule and the common-law rule of evidence announced in *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418 (1988).

Applying these limiting factors to the prohibition, I would not, for example, conclude that the plaintiff's communications with the Harvard patrol officers and dispatcher would have been impermissible. Observations by an employee of apparent wrongful conduct by other employees ought not generally be construed

to be within the scope of an employee's employment unless it was their responsibility to observe or investigate such conduct.[4] Consequently, hearsay statements about such observations should not be admissible against the organization under the admissions exception to the hearsay rule.

I view the plaintiff's communications with the Harvard police lieutenants, however, as more problematic. Those employees clearly had a measure of supervisory responsibility over Stanford, whose job performance was to be a central issue in her discrimination litigation. Thus, those interviews run afoul not only of the prohibition against communicating with employees about matters within the scope of their employment but also the prohibition against communicating with employees having managerial responsibility regarding the subject of the representation.

*Sanctions.* I fully support the imposition of sanctions by trial judges against litigants who violate or abuse the discovery rules, obstruct the efficient exchange of discoverable information, or who take and litigate frivolous positions. The use of the cost of litigating such matters as a measure of the appropriate sanction also makes a great deal of sense. But DR 7-104 (A) (1) and rule 4.2 are ethical rules, not discovery rules. In addition, the position taken and arguments made by the plaintiff law firm were not frivolous, and its actions were not clearly violative of the ethical rules at the time, in light of the state of the law regarding the reach and meaning of DR 7-104 (A) (1).[5] Therefore, notwithstanding my view that some of the plaintiff's actions violated DR 7-104 (A) (1) and rule 4.2, as I would interpret them, I would vacate the financial sanctions as an abuse of discretion. I would leave the remainder of the motion judge's order in effect.

---

[4]Compare *Dent* v. *Kaufman*, 185 W. Va. 171, 176 (1991) (no matter how damning, coworker's observations of improper behavior of colleagues would not constitute admission), with *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418, 420-421 n.3 (1988) (witness's duties included receiving reports of incident investigations, therefore his hearsay statement about cause of incident was statement about matter within scope of employment).

[5]This was the rule in effect when almost all of the ex parte communications took place.