Lu, John T., J.
INTRODUCTION
The Plaintiff, Inception, LLC (Inception), moves to compel disclosure of the content of a meeting on July 25, 2008. The meeting was called by an attorney for the Executive Office for Administration and Finance, and included two attorneys from the Division of Capital Asset Management and representatives of state agencies that were located or were to be located in the office space. The subject of the meeting was whether the various state agency tenants would vacate the building. This issue is the subject of this litigation. The court denies the motion to compel concluding that the defendants (Commonwealth) have met their burden of showing that the attorney-client privilege prevents disclosure and that there was not a waiver. Finally, the court concludes that Inception’s open meeting argument is without merit.
DISCUSSION
I. The Standard
The burden of proving that the attorney-client privilege applies to a communication rests on the party asserting the privilege. In the Matter of the Reorganization of Elec. Mut Liab. Ins. Co., 425 Mass. 419, 421 (1997); Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 115 (1997). The proponent of the privilege must show (1) that an attorney-client relationship exists, (2) that the communications were made in confidence, and (3) that the communications were for the purpose of giving or receiving legal advice. Reorganization of Elec. Mut. Liab. Ins. Co., 425 Mass. 421. The burden of showing that the privilege has not been waived is also on the proponent of the privilege. Id.
Whether the proponent must show the existence of a privilege by a preponderance of the evidence or by some other evidentiary standard has not been expressly stated in any case the court has found. The standard for related issues, such as showing that the crime-fraud exception to the privilege applies, is a preponderance of the evidence. Purcell, 424 Mass. at 113 (“We conclude that facts supporting the applicability of the crime-fraud exception must be proved by a preponderance of the evidence”). In most civil actions, the party having the burden of proof must prove the elements of its case by a preponderance of the evidence. Stepakoff v. Kantar, 393 Mass. 836, 842 (1985). Mass. Practice §13.53 lists types of civil actions with a higher standard of proof, none of which apply in this case; the court assumes that the preponderance of the evidence standard applies.
In Messing, Rudavsky, & Weliky, P.C. v. President and Fellows of Harvard College, 436 Mass. 347 (2002), the Supreme Judicial Court established the scope of the attorney-client privilege in the corporate context.[1] Messing defined a “represented person” in the corporate context as one who has the “authority to commit the organization to a position regarding the subject matter of representation” or to make decisions on behalf of the organization about the course of litigation. Id. at 357. “It is now well established that communications between government agencies and agency counsel are protected by the [same attorney-client] privilege as long as they are made confidentially and for the purpose of obtaining legal advice for the agency.” Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 450-51 (2007) (stating “explicitly that confidential communications between public officers and employees and governmental entities and their legal counsel undertaken for the purpose of obtaining legal advice or assistance are protected under the normal rules of the attorney-client privilege”). When the proponent of the privilege is a state agency, the burden of proof remains on the agency as the claimant. Id. at 450 n.9.
II. Waiver Because Multiple Parties Were Present During the Meeting
The attorney-client privilege is waived when a communication is made in the presence of a non-necessaiy agent of the attorney or client. Commonwealth v. Senior, 433 Mass. 453, 457 (2001); Restatement (Third) of the Law Governing Lawyers, §70 (privileged persons include clients, the clients’ lawyers, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation). “Communications between an attorney and his client are not privileged, though made privately, if *552 it is understood that the information communicated is to be conveyed to others.” Peters v. Wallach, 366 Mass. 622, 627 (1975).
Massachusetts has adopted the “common interest” exception to the rule, as articulated in the Restatement (Third) of the Law Governing Lawyers, §76(1), which provides that when multiple clients with a common interest are represented by separate lawyers and agree to exchange information about the matter of common interest, communications of any of the clients that would otherwise be privileged remain privileged as against third persons. Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 617 (2007) (“adopting] the principle of Restatement (Third) of the Law Governing Lawyers §76(1) as the law of the Commonwealth”).[2]
In this case, the common interest exception applies. It appears that all of the non-lawyers in attendance at the July 25th meeting would be entitled to assert the privilege had they met with their respective attorneys in private, and there was an agreement to exchange information about a matter of common interest, the breaking of a lease with obvious litigation potential. There was no waiver. Hanover Ins. Co., 449 Mass. at 617; Suffolk Constr. Co., 449 Mass. at 450-51.
III. Waiver by John Sites
If a party voluntarily discloses a communication which is otherwise protected by the attorney-client privilege, the privilege is waived as to any other communications pertaining to the same subject matter. Grieco v. Fresenius Med. Care, Suffolk Superior Court civil action no. 06-854BLS2 (Feb. 20, 2008) [23 Mass. L. Rptr. 588). The proponent of the privilege bears the burden of showing that the privilege has not been waived. Reorganization of Elec. Mut Liab. Ins. Co., 425 Mass. at 421. In this case, the parties have submitted competing affidavits on the question of whether John Sites disclosed to James Soffan the communications made during the July 25th meeting. Inception asserts that Mr. Sites told Mr. Soffan he had attended a meeting at the State House at which DOR and DCAM representatives were present to discuss DCAM’s determination to break its lease due to the carbon monoxide incident, as well as its intent to assert that Inception did not timely complete renovations. Mr. Sites, in his affidavit, claims to have had no such conversation with Mr. Soffan. The issue is one of credibility, and it is impossible to credit one affidavit over the other without an evidentiary hearing. However, on this record, the court is persuaded that the Commonwealth has demonstrated that Mr. Sites did not waive the privilege.[3]
IV. The Open Meeting Law
G.L.c. 39, §23B, the open meeting law, provides: “All meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided by this section.” The law is “designed to eliminate much of the secrecy surrounding deliberations and decisions on which public policy is based.” Ghiglione v. School Comm. of Southbridge, 376 Mass. 70, 72 (1978). The law enumerates ten exceptions under which closed, executive sessions may be conducted. Relevant to this case are §§23B(3) and (6). Section 23B(3) permits a closed meeting “[t]o discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the governmental body.” Section 23B(6) allows a closed meeting “(t]o consider the purchase, exchange, lease or value of real property, if such discussions may have a detrimental effect on the negotiating position of the governmental body and a person, firm or corporation.”
In Doherty v. School Comm. of Boston, 386 Mass. 643 (1982), the Supreme Judicial Court considered whether the school committee violated the open meeting law when it met in closed session to vote on massive teacher layoffs. The Court found that “the school committee could properly anticipate a challenge” to its proposed action by the teachers’ union and concluded that “if a governmental body meets in executive session to take action which may affect its litigation position, there is no requirement that its action be ratified in an open meeting. Id. at 648, 644. The Court stated: ”[b]y its express terms G.L.c. 39, §23B(3) does not require the school committee to reconvene in an open meeting if, at the time it goes into executive session, the matter to be discussed concerns litigation strategy and an open meeting might have an adverse impact on the committee’s litigation position." Id. at 647.
In District Attorney for the Plymouth Dist. v. Selectmen of Middleborough, 395 Mass. 629, 632 (1985), the Supreme Judicial Court held that the law protects the attorney-client privilege in a private meeting with counsel to discuss threatened or active litigation. The Court stated: “in our view the Legislature contemplated the need for confidential discussion between attorneys and their public clients in enacting the third exception for litigation and collective bargaining and contemplated the need for confidentiality in contract negotiations in enacting the sixth exception for contracts involving real property.[4] Id. at 633. Plymouth involved a closed executive session held by the town’s board of selectmen in which the board sought the advice of its attorney as to the effect of certain aspects of a proposed trash disposal contract. The Court found that the board had. violated the open meeting law and the communications were not privileged, however a ’’board member acknowledged that none of the reasons for holding an executive session, set forth in G.L.c. 39, Section 23B, applied." Id. at 631. In this case, where the attorneys and representatives of state agency tenants met to discuss vacating the premises, the Commonwealth could anticipate legal action by Inception, and §23B(3) applies. There was no violation of the open meeting law.
*553 ORDER
The plaintiff, Inception, LLC’s Motion to compel Discovery and Disclosures concerning the July 25, 2008 meeting (paper #6) is DENIED.

Messing addressed whether, and to what extent, Mass.R.Prof.C. 4.2, the rule prohibiting attorneys from communicating ex parte with represented parties, also prohibits ex parte communications with the employees of an organiza- • tion represented by counsel. 436 Mass. at 349.

The Restatement (Third) of the Law Governing Lawyers, §76 (1) states:
If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged that relates to the matter is privileged as against third persons.
Comment b. The rationale behind this section is to permit those with common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers.
Comment c. Communications of several commonly interested clients remain confidential against the rest of the world, no matter how many clients are involved. However, the known presence of a stranger negates the privilege for communications made in the stranger’s presence.

The court does not reach the issue of whether Mr. Sites could waive the privilege, as the parties have not fully briefed the issue.

The real property exception, G.L.c. 39, §23B(6), which permits a governmental body to hold an executive session “to consider the . . . lease or value of real property, if such discussions may have a detrimental effect on [its] negotiating position,” may be applicable in this case where the Commonwealth met with its attorneys to discuss breaking a commercial lease, however the Court in Plymouth suggested that this exception may not be as applicable as the litigation strategy exception contained in §23B(3). 395 Mass. at n.5. The Court stated: “[m]any open-meeting laws provide an exception for proceedings during which acquisitions of real property are to be discussed. The reasoning behind the exception is that public discourse would invite speculation and thus drive up the eventual price paid by the government.” Id.